OTIS ELEVATOR
COMPANY, Appellant,

v.

George BEDRE, Appellee.

No. 09–87–057 CV.

Court of Appeals of Texas,
Beaumont.

Oct. 6, 1988.

Rehearing Denied Oct. 26, 1988.

Michael R. McGown, Weller, Wheelus & Green, Dewey J. Gonsoulin, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellant.

Benton Musslewhite, Houston, Joseph C. Blanks, Reaud, Morgan & Quinn, Beaumont, Charles Dewey Cole, Newman, Schlau, Fitch & Burns, New York City, for appellee.

## OPINION

BROOKSHIRE, Justice.

The Appellee sustained serious personal injuries on January 22, 1981, at an oil refinery in Beaumont. Appellee was employed by a local oil company in the coker unit which had been built by another company in 1961. Apparently, in 1961, at that same time, an elevator had been designed and manufactured by Otis Elevator Company. That elevator was installed in the coker unit by Appellant. The Appellant had also repaired the elevator periodically under a maintenance agreement signed in 1975.

On the date of the occurrence, Bedre, in the company of another co-employee, used the Otis Elevator to go to the top of the coker unit. There, he attempted to remove the head of a large drum. Bedre and another removed the top of the drum. Immediately, steaming hot water poured out of the drum because, apparently, yet a third fellow employee had failed to shut off a certain water valve. Then Bedre and Rodolfo Torres decided to go to the level, or deck, where the crucial valves were located. This level, or deck, was two floors below the top deck.

There were present four means or methods of descending to the valve deck. One was the elevator. The second was an emergency slide pole. The third and fourth means were two separate sets of stairs. The Appellee first chose the use of the elevator but it did not respond. He then decided to use the emergency slide pole. Apparently, Bedre and Torres were successful in sliding down the emergency slide pole to the floor immediately below. However, after that slide, when Bedre attempted to slide down a second slide pole, he slipped because the pole was then wet with both water and oil. The water and oil had spilled from the drum. Bedre sustained personal injuries, which were the basis for this lawsuit. Bedre pleaded his cause of action against Otis Elevator Company, alleging both strict liability and negligence. It was stipulated that the elevator was designed and manufactured by Otis Elevator Company.

The trial court submitted the following issues concerning the liability of Otis Elevator Company:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the elevator was defective or unreasonably dangerous because of the way it was maintained by Otis Elevator Company?

"ANSWER: Yes.

"If you have answered Special Issue No. 1 'Yes', and only in that event, then answer Special Issue No. 2.

### "SPECIAL ISSUE NO. 2

"Was such defect a producing cause of the occurence in question?

"ANSWER: Yes."

The jury absolved Bedre of all contributory negligence. The damages awarded were substantial. The jury answered "No" to the special issues that inquired if Bedre was guilty of negligence in using the emergency pole, in failing to ascertain whether the valve was shut off prior to taking the head off the drum, and in failing to use the stairway.

A basic thrust of the Appellant's points of error is that the trial court erred in submitting Special Issue No. 1 to the jury which the Appellant maintains, in effect, combined, erroneously, both the theory of strict liability with the theory of negligence. To be more specific, the Appellant

advances the argument that the trial court committed error in overruling its objections to Special Issue No. 1 because:

"(a) It imposes strict liability without fault without requiring the jury to find any defect in the elevator when it left the hands of the manufacturer;

"(b) An affirmative finding to such issue would not support a judgment under the products liability laws of the State of Texas;

"(c) Texas recognizes no cause of action for strict liability arising from defective maintenance."

It was stipulated that the elevator involved in this litigation was designed and manufactured by the Otis Elevator Company in 1961. The record reflects that the elevator was installed at the Mobil Oil Refining Plant when the coker unit was built by Lummus in 1961. The elevator had been there since June 22, 1961. The maintenance contract on the elevator began some 14 years later. Hence, a 14–year hiatus occurred when Otis had no connection with the elevator.

We conclude that, basically, as to Otis, strict liability in tort was submitted to the jury. The two issues set out above certainly did not submit, in any traditional, classical, correct sense, theory of negligence and proximate cause. These two issues were the only liability issues submitted against Otis.

Appellee places major reliance on *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). But the crucial facts, in *Bell Helicopter Co., supra*, and this case are meaningfully different. In this case, the Otis elevator in question had not been sent back to an Otis maintenance and repair shop; nor had the elevator been placed in one of Otis' own authorized service stations. Otis had not regained possession or title to the elevator in question; nor had Otis issued any direct, unequivocal orders or authorizations to replace certain parts or systems on the elevator. In *Bell Helicopter Co., supra*, these compelling, paramount facts existed.

Furthermore, no jury finding exists that the elevator in question was defective when it left the possession of Otis and entered into the stream of commerce. In fact, Otis lost control and possession of the elevator when it was sold in 1961. Otis never regained control or possession in the same manner as did Bell Helicopter Company.

Bell exercised virtually complete control and possession of the Bell helicopter from 1969 to 1973. Our record on this point is vastly different and distinguishable. Also, in *Bell, supra*, a unique relationship existed between the service stations and Bell. Our case is also dramatically different on this point. Indeed, the facts in this case subjudice are opposite. Otis had no "service stations." Bell could require the 102 system, blade, tail rotor system to be replaced by the 117 system. The 102 system was subject to in-flight fatigue fracture failure.

### The Civil Rules

*Tex.R.Civ.P. 277*, in effect at the time of the trial, provided, in pertinent part, that:

"In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, *shall submit the cause upon special issues controlling the disposition of the case* that are raised by the written pleadings and the evidence in the case....

"It shall be discretionary with the court whether to submit separate questions with respect to each element of a case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements or issues....

"In submitting the case, the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject

to the objection that it is a general charge.

. . . .

"The court may submit *an issue disjunctively where it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists . . . .*" (Emphasis added)

█ The record does not prove that one or the other of the conditions or facts inquired about in Special Issue No. 1 necessarily existed. No issue or question was submitted to the jury on the condition of the elevator—defective or otherwise—on the date it left the possession of Otis. Thereafter, the elevator was owned, possessed and controlled by Mobil Oil for some 14 years.

*Tex.R.Civ.P. 1* provides that the proper objective of the rules of civil procedure is to obtain a just, fair, equitable, impartial adjudication of the rights of the litigants *under established principles of substantive law.* This was not accomplished.

### The Issues and Lack Thereof

The trial court did not submit the special issues that controlled the disposition of the case because the jury was not asked if the elevator was defective at the time it left the possession of Otis. Furthermore, the jury was not asked if the maintenance by Otis was negligent. Also, there was no proximate cause issue submitted involving the acts or omissions, if any, of Otis Elevator Company.

Although *Tex.R.Civ.P. 277* permits the trial court to submit issues broadly, *Rule 277* does not permit a clearly erroneous submission that violates the firmly established rules of the substantive law of negligence and products liability or strict liability in tort.

In *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648 (Tex.1977), Justice Barrow, writing for the Court, stated that it is now firmly established, in Texas, that a manufacturer is liable for unreasonably dangerous products whether designed defectively and then manufactured as designed or whether designed perfectly but defectively manufactured thereafter. Justice Barrow writes further, at page 650:

"... A defect in a product at the time of an accident is not alone enough to render the manufacturer strictly liable. Therefore, the question before us is whether there is evidence to support *the jury finding that the machine was defectively designed at the time it was sold, and that the defect was a producing cause of the failure of the safety device on September 1, 1975.*" (Emphasis ours)

In this case subjudice, there is no jury finding that the elevator was defective in any manner when sold to Mobil Oil in 1961. *Herbert v. Loveless*, 474 S.W.2d 732 (Tex. Civ.App.—Beaumont 1971, writ ref'd n.r. e.). Restatement (Second) of Torts Sec. 402A (1965) emphasizes that the burden of proof is imposed upon the plaintiff to establish that the product was in a defective condition at the time the said product left the hands of the manufacturer or of the particular seller. Restatement (Second) of Torts, Sec. 402A, (Comment g, 1965). We quote from *Herbert, supra,* at page 737:

"Dean Keeton in his article 'Products Liability–Liability Without Fault and the Requirement of a Defect', 41 Texas L.Rev. 855, 858 (1963) says:

" 'The principle of strict liability has been regarded as applicable *only when the product leaves the manufacturer's hands in a defective condition . . . .*' " (Emphasis added)

See *General Motors Corporation v. Franks*, 509 S.W.2d 945 (Tex.Civ.App.—Beaumont 1974, writ dism'd.) In *General Motors Corporation, supra,* the court wrote, at page 946:

"One of the essential elements of Franks' case in order to prove a cause of action against the manufacturer based upon the law of products liability was proof that he was injured because *the truck was in a defective condition when it left G.M.C.'s hands . . . .*" (Emphasis added)

It is of significant importance to observe that, on design defect, in Pattern Jury Charges, the question is specifically asked if the product was defectively designed at the time it was manufactured by the manufacturer. In a proper case, the term "left the possession of" may be substituted for "was manufactured by" in the first questions submitted in an appropriate series of questions. 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.03 (1982).

No such finding was made by the jury that the elevator was defective at the time that it left the possession of the Otis Elevator Company. But it is extremely interesting and significant that the Appellee tendered an issue reading:

"Was the elevator defective at the time it left the possession of the OTIS ELEVATOR COMPANY?

"ANSWER: _____"

This issue was refused. It was followed by an issue with the proper predicate. The issue read:

"Was that defective or unreasonably dangerous condition a producing cause of the occurrence in question?

"ANSWER: _____"

This issue was, likewise, refused.

Yet another issue, tendered by the Appellee, read:

"Was the elevator defectively designed at the time it was manufactured by OTIS ELEVATOR COMPANY?"

This was followed by an issue reading:

"Was such defective design a producing cause of the occurrence in question?"

All these issues, tendered by the Appellee, were refused. Certainly, the Appellee must have thought these issues were necessary, ultimate and controlling special issues or questions.

Next, the Appellee tendered a series of issues asking, in general, was the failure of the elevator due to the negligence of Otis Elevator Company, followed by an issue asking if the failure of the elevator was a proximate cause of the injury in question. These negligence issues were refused. There were other issues, all tendered by the Appellee, inquiring if Otis' failure to overhaul or replace the elevator was negligent conduct.

A number of other questions or "special issues", dealing with the alleged negligence of Otis, were submitted along with the proper proximate cause issues. None of these issues were permitted to be placed in the charge. None went to the jury for its determination.

*Possible Negligence Issues As To Otis*

■ Upon reviewing and analyzing the record, we conclude that the issue of negligence, on the part of Otis Elevator Company, was raised. To mention a few of the raised fact issues, on negligence, we list, in part:

1. The state or the repair or maintenance of the interlocks;

2. The consistently erratic behavior or movements of the elevator, itself;

3. The fact that when the elevator was summoned, many times, to different floors, said elevator would not move;

4. The record tends to show that there was consistent trouble with the elevator;

5. The fact that, on occasions, the elevator (when a person got out of it) would go up and down several times before said elevator would stop;

6. The quality of the maintenance and repair work done on the elevator by Otis raised the issue of negligence;

7. The elevator, most of the time, would not move if a door to the same was either open or slightly open;

8. That if a workman of Mobil was on the top deck of the coker unit and the elevator was on the bottom floor with the doors open, the elevator, a majority of the time, would not move up to the top deck even though summoned;

9. That the elevator would not operate properly and would not respond to summonses;

10. That when one witness was asked whether any problems existed with the elevator moving off the first floor, the answer, in substance, was this: "The only way I can answer that is that we had so many problems that it is very possible that there are all kinds of problems with it [the elevator]";

11. That Otis might have been negligent in the selection of the parts used in the repairs;

12. That Otis may have been negligent in the selection and supervision of its repairmen employees;

13. That Otis had been notified, a number of times, that the elevator had consistent trouble operating and that the first floor interlock was not working and, apparently, has not repaired same;

14. The raised fact that when the elevator would reach the top of the unit it acted erratically;

15. That, sometimes, it would stay at the top and sometimes it would stay at the bottom, apparently on its own initiative, without summonses;

16. The raised fact that there were: "Numerous times; numerous times; and before they would even get to the main gate, it would be broke down again", tending to raise the issue that the repair work done was not satisfactory or was negligently performed.

17. We find this in the record:

"Q Well, compared to the other equipment on your unit, how reliable was the elevator?

"A The elevator was the biggest sore we had, really, because it never worked and people had to walk the stairs and they didn't like it because it's a long ways up the stairs to their job on the top deck."

As to the form of questions to the jury, we, of course, are aware of *Lemos v. Montez*, 680 S.W.2d 798 (Tex.1984).

We do not maintain that these matters proved the negligence of Otis conclusively or as a matter of law. We do take the position that the record shows that there were some reasonably strong, probative evidentiary facts that raised the issue of Otis' negligence and would properly form the basis of a correctly drafted negligence issue, or issues, followed by the proper proximate cause issues. This was simply never done as this case was submitted to the jury.

Without going into as much detail, we perceive that other parts of the record raised the issue of whether or not the elevator was reasonably fit for its intended use and whether or not it was defectively designed, when it left Otis' possession, under all the surrounding facts and circumstances, considering where it would be operating.

However, since Mobil, at times, lubricated the doors and the runners upon which the doors operated and Mobil performed other minor maintenance and repairs, we doubt that, under this record, the doctrine of res ipsa loquitur is properly applicable. But we do not rule out, finally, the doctrine of res ipsa loquitur because we cannot anticipate the entire evidentiary record and testimony made upon the second, partial trial. *Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1974); 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 61.01 (1982).

Bedre argues an alternative theory, in his brief, that negligence has been found by the jury against Otis. But it is lucidly clear that the jury did not have a chance to pass on the negligence of Otis or that Otis failed to use ordinary care. On the alternate negligence theory, there was no proximate cause issue submitted to the jury relating to the actions or omissions of Otis.

We agree with the Appellee's Point No. 7 that, in the event of a reversal of the judgment, the new trial should be limited to the issues of Otis' liability only. The special issues or questions, concerning the actions and alleged negligence of Bedre, were properly submitted accompanied by correct definitions. The jury absolved Bedre of negligence. These issues are not to be

retried. The damage issues were correctly submitted and they are not to be retried. *TEX.R.APP.P. 81(b)(1).*

It is interesting, informative and crucial to point out and stress that, in the 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC (1982), there exists a series of approved pattern jury charges concerning products liability. These issues, or questions, are set out, generally, in Chapters 70 and 71, beginning at pages 199 and 207, respectively. We note that, in virtually every pattern jury charge question, the jury is asked if the product was defective at the time it left the possession of the manufacturer or seller. See, generally, Pattern Jury Charges 71.01 through 71.02F, both inclusive.

If the question involved design defects, then the questions were uniformly asked in this typical manner:

"Was the automobile defectively designed at the time it was manufactured by the ABC Company?"

This question was followed by an issue asking if such defective design was a producing cause of the occurrence in question. These design defect questions were accompanied by a correct definition of "defectively designed."

If a manufacturing defect was raised, then the question was worded thusly:

"Was the automobile (or other product) defective at the time it left the posses-

sion of the ABC Company (or Otis Elevator Company)?" PJC 71.01A, supra.

Since the issues submitted to the jury do not establish a correct or complete ground or grounds of recovery against Otis, the judgment below is partially reversed and the cause is partially remanded for a limited retrial consistent with this opinion.

REVERSED AND REMANDED.

BURGESS, Justice, concurring.

I concur in the result and a great majority of the discussion. I do not adopt the majority's statement: "However, since Mobil, at times, lubricated the doors and the runners upon which the doors operated and performed other maintenance and repairs, we doubt that, under this record, the doctrine of res ipsa loquitur is properly applicable."

DIES, C.J., joins in the above concurring opinion.