Theddie Ray LEWIS, Appellant,

v.

MUNDY CONSTRUCTION COMPANY, INC. and Mundy Industrial Services, Inc., Appellees.

No. C14–88–813–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 12, 1989.

Robert V. Holland, Jr., Kelly D. Stephens, Houston, for appellant.

Dale Trimble, Houston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellant was working as a union carpenter for a contractor at the Exxon refinery in Baytown, Texas. He tripped and fell over a hose and injured his back. Lewis sued appellees Mundy Construction Company, Inc. and Mundy Industrial Services, Inc., alleging that the negligent conduct of their employees caused his fall. The case was tried to a jury, which found no liability of either company. The jury instead found that Lewis was negligent and awarded him zero damages. The trial court accordingly entered judgment for appellees, and Lewis appeals. We affirm.

Lewis alleged eight points of error. In point of error one, Lewis challenges the trial court's action in allowing Mundy Industrial to withdraw deemed admissions and file amended responses to his requests for admissions. In points of error two and three, he argues that the trial court erred in allowing Mundy Industrial and Mundy Construction to file late answers to interrogatories.

 Rule 169 of the Texas Rules of Civil Procedure addresses requests for admissions and states that the trial court may permit withdrawal of deemed admissions upon a showing of good cause. The court must also find that the parties relying on the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be furthered thereby. To establish good cause, a party must show legal or equitable excuses for his failure to answer. *Eckman v. Centennial Savings Bank*, 757 S.W.2d 392, 396 (Tex.App.—Dallas 1988, writ denied). The trial court has broad discretion in permitting withdrawal or amendment of the admissions, and its ruling will be set aside only on a showing of clear abuse of discretion. *Crime Control, Inc. v. RMH–Oxford Joint Venture*, 712 S.W.2d 550, 552 (Tex.App.—Houston [14th Dist.] 1986, no writ). For there to have been an abuse of discretion, the court's action must have been arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). 

A party who fails to respond to interrogatories may not present the evidence that it was under a duty to provide therein unless the trial court finds that there was good cause. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record. TEX.R.CIV.P. 215(5).

Counsel for the two Mundy companies argued that the failure to answer the discovery requests was not a pre-planned attempt to avoid doing so. The record indicates that Lewis' second set of interrogatories to Mundy Construction and a first set of interrogatories and a request for admissions to Mundy Industrial were filed with the District Clerk of Harris County on May 31, 1985. Two attorneys at one law firm were handling the case for the defendants, and the cover letter to the District Clerk shows a xerox copy to one of the two. Also in the record is a copy of a certified mail receipt postmarked May 31, 1985, and signed by someone from the firm attesting to the receipt of material mailed to that attorney.

The attorney testified at a pre-trial hearing, however, that he did not recall receiving the discovery requests. The other attorney on the case died suddenly in September 1985, and the testifying attorney stated that he did not become aware of the unanswered discovery requests until sometime in 1986. Initially he was confused because the request for admissions was addressed to Mundy Industrial. Yet, in the body of the request, it was Mundy Construction that was asked to admit or deny the facts set forth, and Mundy Construction had already responded to a similar request. Also, because the discovery requests were not signed or dated in the certificate of service, the attorney questioned whether they had actually been filed. He called the office of Lewis' counsel and was told by someone there that he or she did not know or were not certain about the filing. He then checked with the District Clerk's office and was told the discovery was not on file.

In any event, there was no response to the discovery. Counsel for Mundy stated in oral argument that the case proceeded with depositions and other discovery which were answered. He testified that he was unaware until right before trial that Lewis intended to move for an instructed verdict or summary judgment on the issue of liability. At that time, he filed a motion requesting leave to answer the discovery requests overnight. The court granted the request but noted, "If there is anything in those responses that amounts to a surprise or other detriment to the Plaintiff, I'm going to ask him to call that to my attention at that time so that appropriate action can

be taken by the Court." When court reconvened the following day, counsel for Lewis did not claim surprise or prejudice but simply objected that no good cause was shown for the late filing.

On appeal Lewis argues that all the facts relied on by appellees constitute neglect rather than good cause. In *Curry v. Clayton,* a delay in filing a response to requests for admissions due to the attorney's busy schedule was not sufficient to show good cause. 715 S.W.2d 77, 79–80 (Tex.App.—Dallas 1986, no writ). In *Texas Employers' Ins. Ass'n v. Bragg,* there was no abuse of discretion in denying a motion for leave to file a late response to requests for admissions based upon allegations that the respondent's attorney had numerous conflicting trial settings and personal matters requiring his attention. 670 S.W.2d 712, 715 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). However, here appellees' failure to respond appears to be the result of genuine confusion rather than conscious disregard or deliberate neglect. When he discovered the existence of the discovery requests, counsel for Mundy attempted to ascertain their status and was persuaded they were not on file. The fact that one request for admissions had already been answered and that subsequent discovery took place shows that appellees were not attempting to avoid discovery. There was no abuse of discretion in the court's granting of appellees' motion contingent upon there being no undue prejudice to Lewis' case. The court's action furthered the presentation of the merits of the action, particularly in view of the jury's finding that appellees were not at fault. Points of error one, two and three are overruled.

In point of error four, Lewis argues that the trial court erred in failing to grant his motion for new trial on the basis of jury misconduct because of the clear and obvious intent of the jury to write a judgment rather than a verdict. He asserts that because appellees admitted injury, the jury was bound to award something for each element of damages submitted.

Appellees deny that they admitted injury. Regardless, no recovery for an injury is allowed unless liability has been established. In the absence of liability, the question of damages becomes immaterial. *Turner v. Lone Star Industries, Inc.,* 733 S.W.2d 242, 246 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). This rule is particularly pertinent since the jury found that Lewis was negligent. In *Southern Pine Lumber Co. v. Andrade,* the issue as to damages became immaterial when. the jury found contributory negligence. 132 Tex. 372, 124 S.W.2d 334, 335 (Tex.Comm'n App.1939, opinion adopted). Here there was also evidence that Lewis' back problems began before the injury and resulted from either degenerative disc disease and/or osteoarthritis. There is no evidence of jury misconduct. Point of error four is overruled.

In points of error five through eight, Lewis challenges the evidence supporting the jury's answers to Questions 1, 4, 5 and 7. In response to Question 1, the jury found that employees of Mundy Construction or Mundy Industrial did not pull or raise a hose or hoses at or about the time of the occurrence in question that caused Lewis' injuries. Lewis argues that this response was against the great weight and preponderance of the evidence. In answer to Questions 4 and 5, the jury found that Lewis himself was negligent on the occasion in question and that such negligence was a proximate cause of his injury. The jury then found zero damages in Question 7. Lewis argues that these answers were not supported by any evidence or, alternatively, were based on insufficient evidence or were against the great weight and preponderance of the evidence.

In reviewing no evidence points, this court must consider only the evidence and inferences which support the challenged jury finding and must disregard all contrary evidence and inferences. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In reviewing factual sufficiency points of error, the court must consider and weigh all of the evidence, both that in support of and that contrary to the finding, and set it aside only if it is so

against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Based on the evidence presented at trial, the jury might have determined either that Mundy employees were not at the scene of the accident or, if they were present, did not cause the accident. When it occurred, Lewis and two others were disassembling a scaffold located in a sulphur conversion unit. Lewis and a co-worker, Tony Cowart, testified that several Mexicans were working in a nearby sulphur pit using heavy hoses, two or three of which were stretched out on the concrete floor. Lewis was carrying pieces of scaffolding to a pile, which necessitated his walking over the hoses, and he had already made fifteen or twenty such trips. According to Lewis and Cowart, on this particular trip, the workers in the pit pulled a hose just as Lewis stepped over it, causing him to trip and fall into a small concrete embankment. The two men identified the workers as Mundy employees because they wore green hard hats with the Mundy logo. Lewis testified that different crafts and different companies wore different colored hats and that he was very familiar with the Mundy logo. His foreman, Donnie Hall, was not there when the accident occurred but arrived soon after in response to a radio call. He corroborated the testimony that Mundy laborers in green hats were working in the immediate area.

The three witnesses were confused, however, about the colors of the Mundy logo. Also, it is interesting to note that, following the accident, no one attempted to talk to the men who allegedly caused it. Furthermore, no one reported the incident to a Mundy foreman or superintendent even to prevent future such accidents. Finally, when Donnie Hall filed his injury report with Exxon, he stated only that "the employee was carrying scaffolding material out of the unit when he tripped over an air hose and fell backwards." No mention was made of any possible Mundy involvement. Hall testified this was because the purpose of the form was just to report the accident and not to find the fault.

An Exxon representative testified that there were as many as 1500 non-Exxon employees working at the plant on the day of the accident. He stated that Exxon does not require that its contractors wear hats of a specific color. He recalled seeing Mundy employees, then as now, wearing blue, green, red and black hats. He also said one can tell for whom an individual works not by his clothing or safety equipment but rather by the equipment he carries, such as carpenter belts, rigging belts and wrenches. Clifford Vowell, Mundy project manager, testified that Mundy Construction's hard hats were orange.

No one was able to state positively that Mundy employees were or were not supposed to be working in the sulphur conversion unit at the time of the accident. Mundy Construction had contracts to perform two three-week jobs, beginning August 25 and September 20, in an area across the street. Those were tentative dates, however, and neither the Exxon representative nor the Mundy project manager was sure when the jobs actually began. The evidence also raised the possibility that employees from at least two other companies with similar logos and/or green hats were in the area.

Both Lewis and his co-worker Cowart testified that Lewis was tripped by a raised hose. Yet, in several written statements, Lewis stated only that he tripped and fell, rather than that he *was tripped*. Lewis admitted he knew the hoses were there and had made fifteen or twenty trips across them. He stated that he never actually saw the hose being raised but that it was above the ground after he fell. Also, the jury may have had reason to question Cowart's credibility after he testified that Lewis' attorney was also representing him on another matter. Again, no one complained to those working with the hoses or to Mundy about an unsafe situation either before or after the accident.

■ Lewis' doctor testified that Lewis suffers from back problems consistent with a fall such as he described. However, the

doctor stated further that due to his age, Lewis also has a lot of arthritis in his back. Another physician, who examined Lewis two years following the accident, noted degenerative disc disease and associated ostophytosis. Whether this condition preexisted the injury or resulted from it was discussed at some length. Furthermore, as stated above, absent a finding of liability, the question of damages becomes immaterial. Having found that neither Mundy Construction nor Mundy Industrial was liable for Lewis' injury, the jury was not bound to award damages.

There is evidence to support the jury's answers to the questions at issue, and those answers were not so against the great weight and preponderance of the evidence as to be manifestly unjust. Therefore, Lewis' points of error five through eight are overruled, and the judgment is affirmed.