**Cyril Ralph DION, Jr., and wife, Janet Dion, Appellants,**

v.

**FORD MOTOR COMPANY, Appellee.**

No. 11–89–155–CV.

Court of Appeals of Texas, Eastland.

Feb. 7, 1991.

Rehearing Overruled March 7, 1991.

Kenneth J. Bower, J.D. Bashline, Otto D. Hewitt III, McLeon, Alexander, Powel & Apffel, P.C., Galveston, for appellants.

David G. Stubbeman, Wagstaff, Harrell, Alvis, Stubbeman, Seamster & Longacre, Burgain G. Hayes, Leslie A. Benitez, Kenneth J. Ferguson, Clark, Thomas, Winters & Newton, Austin, William A. Hicks, McMahon, Smart, Surovik, Suttle, Buhrmann & Cobb, Abilene, for appellee.

## OPINION

DICKENSON, Justice.

This is a products liability case involving a tractor which was manufactured in 1950 and which rolled over on its operator in 1982. The jury found that the tractor was not defectively designed or marketed, and the trial court refused to submit issues on the claim that the manufacturer had a post-sale duty to warn the tractor's owner of its propensity to roll over. We affirm.

Cyril Ralph Dion, Jr. (Dion) and his wife, Janet Dion (Mrs. Dion), sued Ford Motor Company (Ford) attempting to recover $3,000,000.00 for damages sustained by Dion and $1,000,000.00 for Mrs. Dion's loss of consortium plus punitive damages in the sum of $15,000,000.00. They claimed that the tractor was unreasonably dangerous due to the lack of a "rollover protection system" ("ROPS").[1] The jury's answers to all of the questions submitted supported Ford's position, and the trial court rendered judgment on the verdict that appellants take nothing by their suit.

### Factual Background

The tractor, a Ford Model 8N, was manufactured by appellee in 1950. The 8N tractor had four adjustable wheels and a low center of gravity. It was the first tractor

---

**1.** A rollover protection system is a safety system designed to protect the driver in the event the tractor rolls over.

in the industry with a three-point hitch. All of these features added stability to the tractor, but it did not have any type of rollover protection system. None of the tractors on the market at that time had rollover protection systems. The evidence shows that it was not technologically feasible to use any form of rollover protection system for tractors at the time the tractor involved in this lawsuit was manufactured and sold.

Subsequently, there were technological advances which made it possible for Ford and other manufacturers to design and manufacture rollover protection systems, or "ROPS," for tractors. At the present time, "ROPS" are standard equipment on all new Ford tractors. "ROPS" can be purchased for installation on older tractors, including the Ford Model 8N, which were not equipped with "ROPS" when they were originally manufactured and sold.

Dion purchased the tractor involved in this lawsuit from a third party in the spring of 1982. The tractor did not have a "ROPS" system, and Dion was never told that he should secure a "ROPS" even though he had the tractor serviced by a dealer who sold tractors manufactured by Ford.

The accident occurred on October 18, 1982, while Dion and a coworker were loading it onto a trailer after working on an oil and gas lease south of Abilene. As Dion was driving the tractor up a ramp to load it onto the trailer, it reared up and fell off the trailer. The tractor landed on Dion, crushing him between the tractor and the ground. Dion sustained serious injuries in the accident. His medical expenses at the time of trial came to a total of $165,082.83.

### The Jury's Verdict

The trial court submitted ten questions to the jury. Those questions and the jury's answers may be summarized as shown:

[1] The tractor was not defectively designed with regard to: [a] the lack of a rollover protection system; [b] its stability; or [c] the lack of a clutch pedal tab.

[2] Ford did not know nor by the application of reasonably developed human skill and foresight should it have known, at the time it sold the tractor, that the tractor had: [a] a propensity to rear, tip, or roll under conditions not reasonably foreseeable to users or [b] a propensity to be unstable when operated with implements intended or reasonably foreseeable for use with the tractor.

[3] Ford was not negligent in its design of the tractor with regard to: [a] stability; [b] lack of a clutch tab pedal; or [c] lack of a rollover protection system.

[4] Ford was not negligent at the time it sold the tractor in failing to warn or adequately warn of the tractor's propensity: [a] to rear, tip, or roll under conditions not reasonably foreseeable to users or [b] to be unstable when operated with implements intended or reasonably foreseeable for use with the tractor.

[5] Dion was negligent in operating the tractor on the date of the accident, and his negligence was a proximate cause of the accident.

[6] The comparative causation issue was not answered because the jury did not find that more than one party's acts or omissions caused the event which caused the injuries.

[7] The "gross negligence" issue was not answered because the jury did not find any negligence of Ford which proximately caused the occurrence.

[8] An award of "0" dollars would fairly and reasonably compensate Dion for past and future physical pain and mental anguish, earnings and earning capacity, disfigurement, physical impairment, and medical expenses.

[9] An award of "0" dollars would fairly and reasonably compensate Mrs. Dion for past and future loss of consortium and household services.

[10] The exemplary damage issue was not answered because the jury did not find that Ford was guilty of gross negligence.

## Points of Error

Appellants assert eight points of error on appeal. They contend the trial court erred in overruling their motion for new trial because: (point one) the jury's "no damage" finding reflects "a passion and prejudice that tainted the entire verdict" and (point two) the jury's negative finding on question two was "contrary to the overwhelming weight and preponderance of the evidence and manifestly unjust." Appellants also claim the trial court erred by adding a "substantial change" instruction to: (point three) the design defect issue [question one] and (point four) the marketing defect issue [question two]. Appellants then argue that the trial court erred in excluding evidence: (point five) that Ford was negligent after 1950 in failing to warn Dion of the risk of rollover accidents or to urge him to install rollover protection devices on his tractor and (point seven) that Ford regained sufficient control of the tractor in 1982 to be strictly liable for its failure to give adequate warnings or instructions regarding the tractor's safe use at that time. Appellants also contend that the trial court erred in refusing to submit jury questions on (point six) Ford's post-sale negligence and (point eight) whether Ford regained sufficient control of the tractor before the accident to impose strict liability for its failure to warn Dion at that time.

## Jury's "No Damage" Finding

█ Appellants assert that the jury's "no damage" findings demonstrate a passion and prejudice that warrant a new trial. The evidence presented at trial clearly shows that appellants suffered extensive damages.[2] However, it is well established in Texas that no recovery is allowed unless liability has been established. In the absence of liability, the question of damages becomes immaterial. *Southern Pine Lumber Co. v. Andrade,* 132 Tex. 372, 124 S.W.2d 334 at 335 (1939); *Lewis v. Mundy Construction Company, Inc.,* 781 S.W.2d

333 at 336 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd w.o.j.); *King v. Bauer,* 767 S.W.2d 197 at 200 (Tex.App.—Corpus Christi 1989, writ den'd); *Turner v. Lone Star Industries, Inc.,* 733 S.W.2d 242 at 246 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Johnson v. Whitehurst,* 652 S.W.2d 441 at 449 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). The jury found that Ford was not liable for appellants' damages. Consequently, the question of damages was immaterial, and any error was harmless. The "no damage" answers do not establish "a passion and prejudice" which would taint the entire verdict. Appellants' first point of error is overruled.

## Marketing Defect

█ Appellants assert in their second point of error that the jury's finding that Ford neither knew nor had reason to know, at the time it originally sold the tractor in 1950, that the tractor had a propensity to tip, roll, or become unstable was against the great weight and preponderance of the evidence. When reviewing a jury verdict to determine the factual sufficiency of the evidence, this Court must consider and weigh all the evidence. A new trial should not be granted unless the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Pool v. Ford Motor Company,* 715 S.W.2d 629 at 634 (Tex. 1986); *Cain v. Bain,* 709 S.W.2d 175 at 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 at 661 (1951). When considering and weighing the evidence, this Court may not substitute its judgment or opinion for that of the jury. *Pool v. Ford Motor Company,* supra at 634; *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 at 796 (1951); *Thompson v. Wooton,* 650 S.W.2d 499 at 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). It is within the jury's province to determine questions of fact, and an appellate court should not set aside the jury findings and

---

**2.** The jury made this finding even though the evidence clearly shows that Dion received serious injuries when the tractor rolled over. It fractured his pelvis, ruptured discs in his back, and severed his urethra. He had 16 operations prior to trial. He walks with difficulty, and he continues to have pain.

award a new trial unless the jury's verdict is manifestly unjust. *Pool v. Ford Motor Company*, supra at 633; *In re King's Estate*, supra at 661.

█ Ford presented evidence that it did not know, nor have any reason to know, that the 8N tractor had a propensity to roll, tip, or become unstable. Dr. Dennis Alfred Guenther, a mechanical engineer who is a member of the American Society of Safety Engineers and the Society of Automotive Engineers, testified that the 8N tractor did not have a tendency to rear up and that it is a very stable vehicle. Dr. Guenther further testified that, when the tractor was manufactured in 1950, it was not unreasonably dangerous for any of its foreseeable uses. John H. Zich, an agriculture engineer specializing in machine design and a former employee of a firm that marketed Ford tractors at the time the 8N tractor was manufactured, testified that there was no basis for Ford to believe that the tractor was dangerous and that it was a very stable and safe tractor. Zich further testified that Ford was aware of tipping in pre-8N tractors but that the available information related to "tricycle" tractors and other model tractors of different designs than the 8N tractor and that there was no reason for Ford to believe that the tipping experienced by pre-8N tractors would be experienced by the 8N tractor. He stated that Ford did not perceive a stability problem with the 8N tractor when the tractor was marketed and sold in 1950.

Appellants presented evidence to the contrary. Zich testified on cross-examination that it has been known for years that tractors roll and tip. The owner's manual that accompanied the 8N tractor warned that the tractor might rear up under certain conditions, and the manual suggested measures an owner should take to prevent or minimize this possibility. Robert Bruce Singer, a mechanical engineer, testified that tractor companies must have known in 1950 that tractors have a propensity to tip because the companies attempted to invent attachments to prevent tipping. He also testified that Ford knew or should have known that the 8N tractor's short wheel base made it unstable and subject to tipping and that the 8N tractor had a propensity to be unstable when operated with implements that were intended for the 8N tractor or implements that Ford could reasonably foresee an individual would use with the 8N tractor.

The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Benoit v. Wilson*, supra at 796; *Rego Company v. Brannon*, 682 S.W.2d 677 at 680 (Tex.App. —Houston [1st Dist.] 1984, writ ref'd n.r. e.); *Taylor v. Lewis*, 553 S.W.2d 153 at 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). The trier of fact also has the authority to resolve any conflicts or inconsistencies in the testimony. *Taylor v. Lewis*, supra at 161. In exercising its authority, the jury found that Ford did not know, nor have any reason to know, that the 8N tractor had a propensity to roll, tip, or become unstable. We hold that this finding is not against the great weight and preponderance of the evidence. *Pool v. Ford Motor Company*, supra at 634; *Cain v. Bain*, supra at 176; *In re King's Estate*, supra at 661. Appellants' second point of error is overruled.

### Design Defect Instruction

Appellants complain in their third point of error that the trial court committed reversible error when it inserted a "substantial change" instruction in connection with the design defect question. In jury question number 1, the trial court asked the jury to answer whether the tractor was "defectively designed with regard to the lack of a rollover protection system, its stability, or the lack of a clutch pedal tab?" This question was accompanied by the following instruction:

A product is not in a defective condition, thus not unreasonably dangerous when sold, when the unreasonably dangerous condition is caused by a substantial change or alteration of the product after it is sold, and but for which unreasonably dangerous condition the event would not have occurred. Substantial change or alteration means that the con-

figuration or operational characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant could not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration.

Appellants objected to the inclusion of the "substantial change" instruction on the grounds that it was a comment on the weight of the evidence and a misstatement of the law, and they assert on appeal that the submission constitutes grounds for a new trial. We disagree. The instruction tracks the language of 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGE § 70.05 (1982).[3]

When the elements of substantial change or alteration are raised by the evidence, the trial court does not err by including a substantial change or alteration instruction in the defective design issue. *Woods v. Crane Carrier Company, Inc.,* 693 S.W.2d 377 at 379 (Tex.1985); *Ramirez v. Volkswagen of America, Inc.,* 788 S.W.2d 700 at 702 (Tex.App.—Corpus Christi 1990, writ den'd); *Federal Pacific Electric Company v. Woodend,* 735 S.W.2d 887 at 892 (Tex.App.—Fort Worth 1987, no writ). The evidence shows that, at the time of the accident, the ballast weight in the left rear tire was at least 600 pounds greater than the ballast weight in the right rear tire. Appellants admitted that this condition did not exist when Ford sold the tractor. Ford recommended in the owner's manual a maximum ballast weight of only 310 pounds in each tire. There is also evidence that the wide discrepancy in tire ballast created an unreasonably dangerous condition and changed the stability of the tractor, that the accident would not have occurred but for the unequal ballast in the rear tires, and that Ford's intended and foreseeable use of the tractor did not include such a discrepancy in the ballast weight of the rear tires. This is sufficient evidence to support the submission of the instruction.

While the cases cited by appellants in their brief contain language which tends to support their position that such an instruction should not be given, each of those cases is factually distinguishable.[4] Appellants' third point of error is overruled.

*Marketing Defect Instruction*

Appellants' assert in their fourth point of error that the trial court erred by including the "substantial change" instruction in the marketing defect issue. Jury question two reads:

Column One Instructions: Answer "Yes" or "No" on each line of column one with respect to the following question.

At the time the Ford Motor Company sold the tractor made the basis of this suit, did it either know or by the application of reasonably developed human skill and foresight should it have known that

---

3. We note that this section was revised in 1990, after the trial of this case, by inserting the word "solely" in front of the word "caused."

4. In *Turner v. General Motors Corporation,* 584 S.W.2d 844 (Tex.1979), there was no proof of "substantial change or alteration of the product" after its sale. In *Fleishman v. Guadiano,* 651 S.W.2d 730 (Tex.1983), the trial court erred by instructing the jury not to consider any evidence of the injured party's negligence, and the Supreme Court encouraged the "bench and bar" to use the Texas Pattern Jury Charges. In *Acord v. General Motors Corporation,* 669 S.W.2d 111 (Tex.1984), the trial court erred by instructing the jury that "[a] manufacturer is not an insurer of the product he designs," and the Supreme Court cites with approval Volume III of the Texas Pattern Jury Charges (1982). In *First International Bank in San Antonio v. Roper Cor-*

*poration,* 686 S.W.2d 602 (Tex.1985), the trial court erred by instructing the jury on "sole cause," and the Supreme Court states that it had explicitly approved the Texas Pattern Jury Charges special issue and instruction on design defect. In *Placencio v. Allied Industrial International, Inc.,* 724 S.W.2d 20 (Tex.1987), a sharply divided Supreme Court said the trial court did not err in *refusing* issues on misuse of the product and on product alteration, specifically stating that it approved the suggested form of misuse submission in the Texas Pattern Jury Charges. Appellant also cites *Blackwell Burner Company, Inc. v. Cerda,* 644 S.W.2d 512 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.), where the court says in dicta that substantial change of the product should be treated like misuse of the product.

the tractor possessed one or more, if any, of the propensities listed below?

Column Two Instructions: *If none of your answers in column one is "Yes", do not answer in columns two and three. If any of your answers in column one is "Yes", then answer "Yes" or "No" on the corresponding line of column two with respect to the following question.*

Did the failure of the Ford Motor Company to warn, or to adequately and sufficiently warn, of the propensities, if any, render the tractor unreasonably dangerous as marketed?

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with ordinary knowledge common to the community as to the product's characteristics.

A product is not in a defective condition, thus not unreasonably dangerous when sold, when the unreasonably dangerous condition is caused by a substantial change or alteration of the product after it is sold, and but for which unreasonably dangerous condition the event would not have occurred. Substantial change or alteration means that the configuration or operational characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant could not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration. (Emphasis added)

Appellants contend that the inclusion of the last paragraph quoted above was improper. Appellants objected to the inclusion of the "substantial change" instruction on the grounds that it was a comment on the weight of the evidence and a misstatement of the law, and they assert on appeal that the submission constitutes grounds for a new trial. We disagree.

■ It is immaterial whether the submission of an instruction was proper if,

under the instructions of the court, the question related to the instruction was not reached by the jury. *Woods v. Crane Carrier Company, Inc.*, supra at 380; *Holland v. Kiper*, 696 S.W.2d 588 at 590 (Tex. App.—Tyler 1984, writ ref'd n.r.e.). The "substantial change" instruction was related to column two of the question. The court's instructions stated that the jury was not to answer column two if its answer to column one was "No." The jury answered "No" to column one. Therefore, under the instructions of the court, the jury never reached the complained of instruction. As a result, whether it was proper to submit the instruction is immaterial. Moreover, the submission of the instruction was proper for the reasons stated in our discussion of the third point of error. Appellants' fourth point of error is overruled.

### Post–Sale Duties

Appellants contend in points five through eight that the trial court erred when it excluded evidence and refused to submit questions on their theory that Ford owed post-sale duties to Dion.

■ A plaintiff can recover damages in a products liability case on one or more of three theories of recovery: (1) strict liability under RESTATEMENT OF THE LAW (SECOND) OF TORTS § 402A; (2) breach of warranty under the Uniform Commercial Code, TEX. BUS. & COM.CODE ANN. § 1.101 et seq. (Vernon 1968 & Supp.1991); and (3) common-law negligence. *Duncan v. Cessna Aircraft Company*, 665 S.W.2d 414 at 423 (Tex.1984). Appellants contend in this case that Ford is liable for its actions and failures after the sale of the tractor under the theories of negligence and strict liability.

### Post–Sale Negligence

■ The essential elements of actionable negligence are: (1) the existence of a duty on the part of one party to another; (2) the breach of that duty; and (3) the injury to the person to whom the duty is owed as a proximate result of the breach. *Rosas v. Buddies Food Store*, 518 S.W.2d 534 at 536 (Tex.1975); *Bell Helicopter*

*Company v. Bradshaw,* 594 S.W.2d 519 at 531 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ Before holding a manufacturer negligent for breach of a post-sale duty, it must be established that the manufacturer assumed a duty and then did not use reasonable means to discharge the duty. *Bell Helicopter Company v. Bradshaw, supra* at 533. In *Bell Helicopter Company,* the Corpus Christi Court of Appeals held a manufacturer liable for breach of a post-sale duty under a negligence theory. That court stated:

> This Court does not adopt the rule ... that a manufacturer is under a continuing duty to improve his product, nor is it necessary for us to hold in this case that a manufacturer has a duty to remedy dangerous defects in a product which are not discovered until after manufacture and sale. However, where the record reflects, as in this case, an apparent assumption of such a duty by a manufacturer, it is not wholly improper for us to measure its conduct against such duty with respect to plaintiffs' allegations of post-manufacture negligence. Here, *Bell assumed the duty to improve upon the safety of its helicopter by replacing the 102 system with the 117 system.* Once the duty was assumed, Bell had an obligation to complete the remedy by using reasonable means available to it to cause replacement of 102 systems with 117 systems. (Citations omitted) (Emphasis added)

■ Ford did not assume a post-sale or post-manufacture duty to Dion in this case. The critical factor in finding that Bell Helicopter Company had assumed a post-manufacture duty to improve upon the safety of its helicopter was that Bell initiated a program to replace the dangerous rotor blade with the improved system.

The excluded evidence shows that Ford sold rollover protection systems to retrofit unequipped tractors and encouraged dealers to encourage owners to install rollover protection systems. However, Ford did not assume a duty to improve upon the safety of its tractor by replacing an existing roll-over protection system with an improved rollover protection system. Consequently, Ford did not institute a replacement program which was the critical factor in *Bell Helicopter Company.* Therefore, we agree with the trial court that Ford did not assume a post-sale duty which would require it to use reasonable means to retrofit all 8N tractors with rollover protection systems.

■ The excluded evidence was also offered to prove that Ford had assumed a post-sale duty to urge the installation of a rollover protection system or warn appellants of the risk of rollover accidents. Whether a duty exists under a given set of facts and circumstances is essentially a question of law for the trial court. *Bryant v. Gulf Oil Corporation,* 694 S.W.2d 443 at 446 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.); *Gray v. Baker & Taylor Drilling Company,* 602 S.W.2d 64 at 65 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.). The trial court concluded that Ford had not assumed such a post-sale duty. Likewise, we hold that the evidence supports the trial court's conclusion that Ford did not assume such a duty. Since the evidence was not offered for any other purposes, it was not relevant to any material issue in the trial, and it was not error for the trial court to exclude the evidence. TEX.R.CIV.EVID. 401, 402. Appellants' fifth point of error is overruled.

■ Appellants requested a jury question regarding assumed duty and negligence after the original sale of the tractor. The request was denied by the trial court. The trial court is only required to submit questions to the jury on material issues raised by the pleadings and the evidence. TEX.R.CIV.P. 278. We have already held that the trial court properly excluded the evidence of assumed duty. Reviewing the record, we do not find any other evidence to support the submission of the issue. Thus, the issue was not raised by the evidence, and it was not error for the trial court to refuse appellants' requested question. Appellants' sixth point of error is overruled.

### Post–Sale Strict Liability

If a product is unreasonably dangerous at the time it leaves the control of a manufacturer, the manufacturer is strictly liable for damages caused by the unreasonably dangerous condition. *Bell Helicopter Company v. Bradshaw,* supra at 531; RESTATEMENT OF THE LAW (SECOND) OF TORTS § 402A. If the product is not unreasonably dangerous at the time it leaves the manufacturer's control, the manufacturer does not become strictly liable for damages if the product subsequently becomes unreasonably dangerous *unless* the manufacturer regains a significant degree of control of the product, and the product is then determined to be unreasonably dangerous before the manufacturer loses control of the product. *Bell Helicopter Company v. Bradshaw,* supra at 531; *Otis Elevator Company v. Bedre,* 758 S.W.2d 953 at 955 (Tex.App.—Beaumont 1988), *aff'd in part and rev'd in part,* 776 S.W.2d 152 (Tex.1989).[5]

In *Bell Helicopter Company v. Bradshaw,* supra at 531, the court found that Bell was strictly liable for damages caused by an unreasonably dangerous tail rotor blade. When the helicopter initially left Bell's control in 1961, it "represented the most advanced state of the art" and was not unreasonably dangerous. Houston Helicopters, a Bell service station, acquired title to the helicopter in 1969. In 1973, Houston Helicopters sold the helicopter to the plaintiff. Approximately two years later, the plaintiff was seriously injured when the helicopter's tail rotor blade broke, and the helicopter crashed. In 1970, Bell had learned that the tail rotor blade was dangerous and had begun a program to replace tail rotor blades with improved blades which were safer. Houston Helicopters held title to the helicopter for three years after Bell instituted the replacement program, but the helicopter was never refitted with the improved blade. The court held as a matter of law that Bell had control of the helicopter on the date Houston Helicopters sold the helicopter to the plain-

tiff and that it was unreasonably dangerous on that date. The court stated:

> Bell regained a significant degree of control, with respect to the issue of strict liability, in 1969, when the helicopter was acquired by Houston Helicopters, a Bell service station, and Bell retained such control until the date the helicopter was sold by Houston Helicopters to Ingle in 1973. This is so because of the unique relationship between the service stations and Bell.

The facts of the present case are more like the facts of *Otis Elevator Company v. Bedre,* 758 S.W.2d at 955, in which the court found that Otis did not regain a "significant degree of control" and, therefore, was not exposed to strict liability. The court factually distinguished the case from *Bell Helicopter Company,* stating:

> In this case, the Otis elevator in question had not been sent back to an Otis maintenance and repair shop; nor had the elevator been placed in one of Otis' own authorized service stations. *Otis had not regained possession or title to the elevator in question; nor had Otis issued any direct, unequivocal orders or authorizations to replace certain parts or systems on the elevator. In Bell Helicopter Co., supra, these compelling, paramount facts existed.*
>
> Furthermore, no jury finding exists that the elevator in question was defective when it left the possession of Otis and entered into the stream of commerce. In fact, Otis lost control and possession of the elevator when it was sold in 1961. *Otis never regained control or possession in the same manner as did Bell Helicopter Company.* (Emphasis added)

Like *Otis Elevator Company,* the present case can be distinguished from *Bell Helicopter Company* on its facts. In *Bell Helicopter Company,* Houston Helicopters held title to the helicopter at the time the unreasonably dangerous condition was discovered and for three years thereafter. The court further found that a "unique

**5.** The Texas Supreme Court held that the court of appeals improperly limited the remand of the   case to the issue of manufacturer's liability and remanded the cause for a new trial on all issues.

relationship" existed between Bell and Houston Helicopters. These were important factors in concluding that Bell regained a "significant degree of control."

 The excluded evidence shows that Dion took the tractor to McMaster Ford Tractor, Inc. for service and that McMaster Ford is an authorized service station for Ford. However, McMaster Ford never took title to the tractor, and Ford never issued any replacement program for the 8N tractor. Ford did not regain a "significant degree of control" as required by *Bell Helicopter Company.* Whether a duty exists under a given set of facts and circumstances is essentially a question of law for the trial court. *Bryant v. Gulf Oil Corporation,* supra; *Gray v. Baker & Taylor Drilling Company,* supra. The trial court concluded that Ford did not regain a significant degree of control of the tractor and, consequently, was not exposed to any post-sale strict liability. The evidence supports the trial court's conclusion. Since the evidence was not offered for any other purpose, it was not relevant to any material issue in the trial, and it was not error for the trial court to exclude the evidence. TEX.R.CIV.EVID. 401, 402. Appellants' seventh point of error is overruled.

Appellants requested that the court's charge to the jury include a question as to whether Ford regained a significant degree of control of the tractor and, if it had, whether Ford failed to give adequate warnings or instructions, whether such failure rendered the tractor unreasonably dangerous, and whether this was a producing cause of the accident. The request was denied by the trial court. The trial court is only required to submit questions to the jury on material issues raised by the pleadings and the evidence. TEX.R. CIV.P. 278. We have already held that the trial court properly excluded the evidence of post-sale control. Reviewing the record, we do not find any other evidence to support the submission of the requested question. Thus, the issue was not raised by the evidence, and it was not error for the trial court to refuse appellants' requested question. Appellants' eighth point of error is overruled.

The judgment of the trial court is affirmed.