**Marjorie Burg SIMS et al., Appellants,**

**v.**

**DEMPSEY–TEGLER & COMPANY, INC., Appellee.**

No. 15084.

Court of Civil Appeals of Texas, San Antonio.

Nov. 22, 1972.

Maxwell Burket, San Antonio, for appellants.

House, Mercer, House & Brock, Del Grosenheider, Austin, for appellee.

KLINGEMAN, Justice.

Appellants, Marjorie Burg Sims, Harry Sims, Martha Ann Vaughn Mabe and husband, William Robert Mabe, and Leo T. Peterson and wife Lorraine Peterson, filed separate law suits against appellee, a brokerage firm dealing in stocks and bonds on a nationwide basis, for losses allegedly suffered by them as a result of appellee's failure to honor their orders to transfer their stocks to another brokerage firm within a reasonable period of time. The suits were consolidated, with trial before a jury. Based upon the jury's verdict, the trial court entered judgment that appellants take nothing.

Appellants contended in the trial court that thirty days was a reasonable period of time to transfer stocks from one brokerage firm to another; that on or about December 15, 1968, all of appellants requested that their stocks be transferred to another brokerage firm; that appellee took a considerable length of time to transfer their stocks, ranging from approximately three months to approximately eight months; that the stocks were declining in value during all of such period of time; and that the losses suffered by them were the difference between the values of the stocks from a period thirty days after their request to transfer was made, and the values of the stocks on the day they were actually

transferred. One appellant, Marjorie Burg Sims, also asserted that appellee failed to tender or deliver to her twenty shares of Texaco stock owned by her, resulting in damages to her in the amount of the value of said twenty shares.

In answer to the only two special issues submitted to the jury, the jury found that thirty days was not a reasonable period of time for appellee to transfer all the stocks in question to another brokerage firm; and that appellee did not fail to tender or deliver to appellant, Marjorie Burg Sims, or her agent, the twenty shares of Texaco stock.

Although much of the testimony pertains to the question of what constituted a reasonable time for one brokerage firm to transfer stocks to another firm, with varying and conflicting testimony in regard thereto, appellants make no complaint on this appeal with regard to the jury's finding to Special Issue No. 1, wherein the jury found that thirty days was not a reasonable time for appellee to transfer all of the stocks in question to another brokerage firm.

By three evidentiary points of error, appellants complain that the trial court erred: (1) in refusing to admit into evidence a financial statement of appellee dated June 1, 1969, (2) in refusing to admit into evidence an accounting report pertaining to appellee made by Peat, Marwick, Mitchell & Co., Certified Public Accountants, and (3) in improperly allowing an expert witness to testify as to what constituted a reasonable time for the transfer of stocks, based upon hypothetical questions propounded to him. By their last point of error, appellants complain that there is no evidence to support the jury's finding that appellee did not fail to tender or deliver to appellant, Marjorie Burg Sims, or her agent, twenty shares of stock (Special Issue No. 2).

We first consider appellants' no-evidence point of error pertaining to the jury's answer to Special Issue No. 2. The stock in question consists of twenty shares of Texaco stock owned by Marjorie Burg Sims, as the result of a two-for-one stock split in July, 1969, which Mrs. Sims was entitled to by virtue of her ownership of twenty shares of Texaco stock. Mrs. Sims testified that she had never received such twenty shares of stock, and that such stock was never tendered or delivered to her by appellee. It appears from the record that Mrs. Sims held twenty shares of Texaco stock in her account with appellee when she requested a transfer of all of her stock to another brokerage firm on December 15, 1968. The record indicates there was a two-for-one stock split of Texaco stock, with the effective dates concerning this split being: the record date, July 10, 1969, and the payable date, August 8, 1969. There is testimony that while the stock was in the possession of appellee on July 10, 1969, that on the payable date for such stock split, August 8, 1969, Mrs. Sims' stock was no longer in its possession, but had been transferred to another brokerage firm at Mrs. Sims' request. Appellee contends that since the stock was not in its possession or control on August 8, 1969, the payable date of such stock split, it was no longer up to them to obtain the additional twenty shares of stock, but up to either Mrs. Sims or the broker who held her stock on such date.

■ While the testimony is in some respects conflicting, it cannot be said that there is no evidence to support the jury's finding to Special Issue No. 2, and there is more than a scintilla of evidence to support such finding. Appellants' point of error that there is no evidence to support such jury finding is overruled.[1]

We consider next appellants' evidentiary points of error. Points of error Nos. 1

---

1. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 28 Tex.Law Rev. 360 (1960).

and 2 complain of the court's refusal to admit into evidence a financial statement distributed by appellee to its customers, dated June 1, 1969,[2] and a letter report of an accounting firm addressed to Norman S. Swanton, Liquidator, pertaining to a financial questionnaire to appellee, dated August 20, 1970.[3] It is appellants' contention that such financial statement and accounting report show a chaotic condition existing in appellee's business, including inadequate accounting records, and inadequate internal controls; and that they were relevant and material evidence with regard to the question of what constituted a reasonable time for appellee to transfer stocks to another brokerage firm. Appellee, on the other hand, contends that there was no proper predicate for the introduction of such exhibits; that insofar as this case is concerned, they were hearsay and that they were irrelevant, immaterial, prejudicial, and inflammatory.

It is to be remembered that appellants tried the case on the theory that any period of time in excess of thirty days was unreasonable, and the only special issue submitted in this regard inquires as to whether thirty days was a reasonable time for appellee to transfer all the stocks in question to another brokerage firm.[4]

Appellee contended that due to the nature and complexity of the many different stocks involved in the various accounts to be transferred, it would take over thirty days to transfer all of the stocks involved, even in the most efficiently operated brokerage firm. It asserts in this connection that the standard to be used in determining whether or not thirty days was a reasonable period of time was the standard of the industry at this particular point in time.

The testimony shows that in the accounts here involved, there were various and sundry stocks; some were over-the-counter stocks; some, New York Stock Exchange stocks; some, American Stock Exchange stocks; some, odd-lot stocks as contrasted with even-lot stocks; some, American Depository Receipt stocks; at least one, a foreign stock; some, marginal accounts; and some, recently purchased stocks. There is testimony that during the period of time here involved, there was a particularly heavy volume of business throughout the stock industry; and that in the transfer of securities during this time, there were serious delays throughout the industry. One of appellee's witnesses, a former employee of appellee in a managing capacity, testified that thirty days was not a reasonable period of time to make such transfers, and that sixty to ninety days would be a normal period of time. Another witness, the district manager of another large brokerage firm, testified that it might take three, four, or five months to transfer securities of the type involved in this case. This witness testified in some detail as to what could cause such delays.

We have carefully examined plaintiffs' Exhibits Nos. 4 and 5, and we find nothing therein which sheds any light on the question of whether thirty days was a reasonable time to transfer stocks from one brokerage firm to another. At most they indicate that appellee was having some difficulties financially and in the operation of its business on the dates involved in such reports, but they do not tend to prove or disprove the ultimate question here involved as to whether thirty days was or was not a reasonable period of time to transfer all of the stocks involved from one firm to another. A trial court will not be held to have erred in excluding proffered evidence unless its admissibility is established. To be admissible, evidence must be relevant and material; it must

2. Plaintiffs' Exhibit No. 4.

3. Plaintiffs' Exhibit No. 5.

4. "Do you find from a preponderance of the evidence that 30 days was a reasonable time for Dempsey-Tegeler & Co., Inc. to transfer all the stocks in question to Schneider, Bernet & Hickman? . . . "
"Answer   No."

tend to prove or disprove some issue in the case. *Dallas Railway & Terminal Co. v. Oehler*, 156 Tex. 488, 296 S.W.2d 757, 759 (1957); *Herfurth v. City of Dallas*, 410 S.W.2d 453 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.).

There was testimony that throughout the industry at the time here involved, a period of time in excess of thirty days would not be an unreasonable period of time to make transfer of the stocks of the nature here involved. This standard would be applicable to appellee, irrespective of whether its business was efficiently operated, or not. In our opinion, the trial court's refusal to allow the introduction of such exhibits into evidence was not error; and in any event, it was not harmful error.[5]

By their third point of error,[6] appellants complain that the trial court erred in overruling their objections to hypothetical questions propounded to a witness, Mr. James Trice, testifying as an expert witness, as to what would be a reasonable time to transfer the stocks involved, in that the hypothetical questions were not based on the real facts of the case. Mr. Trice testified that he is the resident manager of Bache & Company, Inc. in San Antonio; that such firm is considered the second largest brokerage firm in the world; and he also testified in some detail as to his experience in this type of work. He was then asked to assume that a brokerage house in San Antonio was requested by some of its clients to transfer their accounts to another brokerage house; that some of such stocks are over-the-counter stocks; some of them are New York and American Stock Exchange stocks; some are odd-lot stocks; some of the stocks had been recently purchased; that some may or may not be American Depository Receipt stocks; that some are foreign stocks; and that during this period of time the volume of trade was heavy. He was then asked what in his opinion would be a reasonable period of time to transfer such stocks from one firm to another. Appellants, at this time, made this objection: "If the Court please, I object at this time because this question with reference to foreign stocks, no foreign stocks are in the record and there is further no recently purchased stocks in the record." After such objection was overruled, Trice testified in some detail as to the difficulties in making transfers of the various types of stocks inquired about; that the fastest you would get anything out would be about a month, and it might take three, four, or five months; that there were serious delays throughout the industry during the time involved. Although appellants' objection was based solely on the absence of foreign stocks and recently purchased securities, they also contend here that in determining a reasonable period of time to transfer the stocks involved, such witness should have considered the chaotic conditions existing in the office of appellee.

Appellants' third point of error is without merit. All the matters asked to be assumed were in evidence. The trial court did not err in overruling appellants' objection as made. The testimony was relevant, material, and properly admissible.

All of appellants' points of error have been examined and all are overruled. The judgment of the trial court is affirmed.

5. Rules 434, 503, Texas Rules of Civil Procedure; Fairchild, Harmless Error, Appellate Procedure in Texas, Chapter 17 (1964).

6. "Where, as in this case, an expert witness is questioned concerning what a reasonable time is, to transfer a customer's stocks from one Brokerage Firm to another under the circumstances, then existing in the Stock Market, and the questions directed to the expert witness do not include, and are not based on the conditions existing within the Brokerage Firm, which had the duty as a matter of law to transfer the stock, it was error for the Court to permit the witness to answer such questions before the jury, because they were not based on the real facts of the case and were misleading to the jury."