**LIVELY EXPLORATION COMPANY, et al., Appellants,**

v.

**VALERO TRANSMISSION COMPANY, Appellee.**

No. 04–87–00380–CV.

Court of Appeals of Texas, San Antonio.

May 18, 1988.

Writ of Error June 16, 1988.

---

Jesse P. Luton, Jr., James P. Pennington, Scott, Douglass & Luton, Houston, Frank Douglas, Christopher Fuller, Scott, Douglass & Luton, Austin, for appellants.

J. Clifford Gunter, Carrin F. Patman, Laura B. Herring, Gregory C. King, Bracewell & Patterson, Houston, for appellee.

Before CADENA, C.J. and REEVES and CHAPA, JJ.

## ON APPELLANT'S MOTION FOR REHEARING

CHAPA, Justice.

Appellant's motion for rehearing is denied, however, the opinion of this Court dated March 31, 1988, is withdrawn, and the following opinion is substituted.

This is an appeal of part of a final judgment following a jury trial. The judgment arose from a suit filed by appellant Lively Exploration Company (Lively) against appellee Valero Transmission Company (Valero) for breach of a gas purchase contract. Lively alleged that Valero breached its obligations under the contract by failing to take delivery of and pay for the Daily Contract Quantity of natural gas during certain contract years or pay for such Daily Contract Quantity of natural gas, whether taken or not. In accordance with the findings of the jury, among other things, the judgment ordered that Lively take nothing on its claim for breach of the take-or-pay provisions of the contract. It is this part of the judgment which is sought to be reversed by this appeal. We affirm.

The issues before us are:

1) whether the court erred in admitting evidence of the Railroad Commission's Gas Market Demand Rule;

2) whether the court erred in including an instruction on the Gas Market Demand Rule;

3) whether the court erred in its definition of the term "deliverability";

4) whether the court's instructions to Special Issue No. 2 were prejudicial comments on the weight of the evidence;

5) whether the court erred in conditionally submitting Special Issue No. 3;

6) whether there was no evidence to support the jury findings on the breach of contract;

7) whether there was insufficient evidence to support the jury findings on the breach of contract; and

8) whether the jury findings on the breach of contract were against the great weight and preponderance of the credible evidence.

In the first two points of error, Lively contends that the trial court erred in admitting evidence of the Texas Railroad Commission's Gas Market Demand Rule and then including the said rule in the charge. Although Lively does not contend the evidence is irrelevant or immaterial, it argues that "the gas market demand rule does not affect the rights and obligations of the parties to the contract by relieving Valero of its obligation to pay for this minimum quantity of gas provided by the contract."

Lively alleged that Valero breached that part of the contract which had a "take-or-pay" provision:

5.3 Subject to the other provisions hereof, Buyer agrees to purchase and pay for (or, if Buyer's performance hereunder is not excused by other provisions of this agreement, pay for, if available, whether taken or not) during the days of each contract year of the term hereof a Daily Contract Quantity of gas from Seller's Lands and Leases in the Contract Area equal to ninety percent (90%) of Seller's daily Deliverability of gas hereunder....

The obligations of Valero under the "take-or-pay" provision of the contract are clearly controlled by the "Daily Contract Quantity" and the "Deliverability" of the gas.

Under Article I of the contract and entitled "Definitions" we find the following:

(e) The term "Daily Contract Quantity" means the quantity of gas per day, averaged over each contract year, which Buyer is required to take from Seller hereunder at the point of delivery specified in this Agreement.

(j) The term "Deliverability" means that quantity of gas which Seller has available for delivery from the Lands and Leases to Buyer during each day, in conformity with the requirements of this Agreement, at a constant rate of flow, when Seller's wells and facilities are not produced in excess of their maximum efficient rate of flow, *but not exceeding the maximum (including overproduction) rate of flow permitted by the laws, rules and regulations of the Railroad Commission of Texas or other governmental regulatory agency having jurisdiction.* Buyer agrees to make nominations, or to cooperate with Seller in the making of nominations, for well allowables (to be fixed or permitted by rules, regulations or orders of the Texas Railroad Commission) sufficient to cover the daily quantities which from time to time Buyer is entitled and elects to take hereunder up to the maximum quantity which in accordance with good engineering and gas production practice can be produced from Seller's wells in the field. (Emphasis added)

Further, the contract includes a clause subjecting the agreement as follows:

## AGREEMENT SUBJECT TO LAWS

13.1 This Agreement is made subject to all valid applicable federal and state laws or city ordinances, and to the orders, rules and regulations of any duly constituted federal or state regulatory body or authority having jurisdiction.

■ Evidence is admissible if it is "relevant and material; it must tend to prove or disprove some issue in the case." *Dallas Railway & Terminal Company v. Oehler,* 156 Tex. 488, 296 S.W.2d 757, 759 (1956); *Sims v. Dempsey–Tegler & Company, Inc.,* 487 S.W.2d 824, 827–28 (Tex.Civ.App.—San Antonio 1972, no writ). It is uncontradicted that the Texas Railroad Commission has regulatory jurisdiction over drilling, production, transportation, and use of natural gas in Texas. It is also uncontradicted that the Gas Market Demand Rule which was applicable to Lively and Valero, was promulgated by the Texas Railroad Commission as a tool to avoid "waste" by determining the overall quantity of natural gas which should be produced in Texas in a given month and to assure fairness in the proration between the different producers. Thus, the rule was relevant and material towards the issue of the quantity of gas which Lively had available for delivery, or in terms of the contract, Lively's "daily Deliverability of gas."

Since the application of the Gas Market Demand Rule tended to disprove that there was a breach of the "take-or-pay" provision, it was admissible. *Dallas Railway & Terminal Company v. Oehler,* 296 S.W.2d at 759.

■ Next, Lively does not contend that the application of the Gas Market Demand Rule to Lively and Valero in the charge was erroneous, but that the charge should not have included the rule because it did not relieve Valero of its contractual obligation. However, the real issue here is whether the rule was relevant and material to prove or disprove that there was a breach of the "take-or-pay" provision of the contract as alleged by Lively. Having concluded that the rule was relevant and material, we fail to see how its inclusion in the charge was harmful error. The first two points are overruled.

In the next two points of error, Lively complains of the court's definition of "Deliverability."

■ An appellant cannot complain that the court has adopted his definition in the charge. *MacFadden Publications v. Wilson,* 121 S.W.2d 430, 433 (Tex.Civ.App.—El

Paso 1938, writ ref'd). A party may not complain of error for the first time on appeal, *State v. Lackey*, 576 S.W.2d 685, 688–89 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.) and an objection to an instruction must be specific and clearly pointed out, or it is waived. *Southwestern Bell Telephone Co. v. Ramsey*, 542 S.W.2d 466, 467 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ The record reflects that the definition of "Deliverability" in the charge was the same one submitted by Lively. Further, although Lively made a general objection to Special Issue No. 2, no specific or clear objection was leveled at the definition of "Deliverability," which was identical to the one submitted to the court by Lively and also found in the contract. The points of error are overruled.

Lively next complains that the instructions to Special Issue No. 2 were prejudicial comments on the weight of the evidence. We disagree.

■ An impermissible comment on the weight of the evidence occurs, when after examining the entire charge, it is determined that the judge assumed the truth of a material controverted fact, or exaggerates, minimizes, or withdraws some pertinent evidence from the jury's consideration. The comment must also be one that probably caused the rendition of an improper judgment. *Alvarez v. Missouri–Kansas–Texas Railroad Co.*, 683 S.W.2d 375, 377 (Tex.1984); *Hirdler v. Boyd*, 702 S.W.2d 727, 730 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Incidental comments are permissible when necessary or proper as part of an explanatory instruction or definition. *Board of Regents of North Texas State University v. Denton Construction Co.*, 652 S.W.2d 588, 595 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Hirdler v. Boyd*, 702 S.W.2d at 730.

■ The first instructions that Lively complains of are:

The term market demand means that amount of gas needed for current consumption.

You are instructed that the production, transportation, or use of gas in a manner, in an amount, or under conditions which constitute waste is unlawful and is prohibited.

You are instructed that the term "waste" includes the production of gas in excess of transportation or market facilities or reasonable market demand for the type of gas produced.

Although Lively does not contend the instructions are an inaccurate statement of the law, it contends the instructions were irrelevant. Lively however, fails to explain how the instructions probably caused the rendition of an improper judgment.

The instructions complained of are relevant in explaining the basis of the Gas Market Demand Rule which we have already concluded was relevant and material. We hold that the instructions were relevant, not a comment on the weight of the evidence, and did not cause the rendition of an improper judgment.

■ The next instruction to Special Issue No. 2 which Lively complains of is:

You are instructed that the Contract provides that subject to its other provisions, Valero shall have the right to purchase such quantity of gas per day as Valero may from day to day elect to purchase up to the total quantity per day which the wells are capable of producing when produced at their respective maximum efficient rates of flow, in Lively's sole judgment reasonably exercised, or at their respective allowable rates of flow under applicable orders, rules, regulations or laws, whichever is the lesser rate of flow.

Lively asserts that the instruction was unnecessary, constituted a comment on the weight of the evidence, and caused the rendition of an improper judgment.

It is uncontradicted that the instruction tracked Article V, § 5.2 of the contract which had been received in evidence. But Lively contends that an unnecessary instruction may amount to a reversible error, and cites *First International Bank in San Antonio v. Roper Corp.*, 686 S.W.2d 602

(Tex.1985) and *Lemos v. Montez,* 680 S.W. 2d 798 (Tex.1984). However, both of these cases involve causes of action whose issues and instructions are specifically set out in the Texas Pattern Jury Charges which were approved with vigor by the Supreme Court. In *Lemos,* the Supreme Court rejected any additions to the correct definition of unavoidable accident in the Pattern Jury Charge stating:

> This Court has not indicated to the bench and bar that the definition should be embellished with the addendum.

*Lemos v. Montez,* 680 S.W.2d at 801.

In *First International Bank of San Antonio,* the Supreme Court again rejected any additions to the Texas Pattern Jury Charge special issue and instructions on design defects by stating:

> We explicitly approved the Texas Pattern Jury Charges special issue and instruction on design defect, but again stated that additional instructions which single out balancing factors are improper and comments on the case.

*First International Bank in San Antonio v. Roper Corp.,* 686 S.W.2d at 604.

This case however, does not involve approved issues and instructions of the Texas Pattern Jury Charges and must be viewed accordingly. *Lively* complains that this unnecessary instruction diverted the attention of the jury from the central issue. In deciding whether this instruction was unnecessary and probably caused a rendition of an improper judgment, we must consider the charge as a whole. *Alvarez v. Missouri–Kansas–Texas Railroad Co.,* 683 S.W.2d at 377; *Hirdler v. Boyd,* 702 S.W. 2d at 730.

We note that the instruction complained of is only one of a number of explanatory instructions generally tracking those parts of the contract which the judge felt were necessary to aid the jury in answering Special Issue No. 2. Lively contends that the initial language of the instruction could have misled the jury away from the real obligations of Valero under the "take-or-pay" provision. To see clearly what adverse effect, if any, this particular instruction had on Special Issue No. 2, we must view the entire set of instructions as set out in the charge:

### SPECIAL ISSUE NO. 2

Do you find that Valero failed to take or pay for an amount of gas equal to the Daily Contract Quantity (DCQ)?
(Answer "yes" or "no".)
Answer no.

### INSTRUCTION NO. 2

You are instructed that the total quantity of gas which Valero was obligated, if not excused under the Contract, to take and pay for, or pay for if not taken, for each of the Contract Years, is that volume of gas equal to the Daily Contract Quantity in effect during the Contract Year multiplied by the number of days during the Contract Year for which such Daily Contract Quantity was in effect.

You are instructed that the term "Daily Contract Quantity" is defined by the Contract to be that quantity of gas equal to ninety percent (90%) of Lively's daily Deliverability under the Contract.

You are instructed that the Contract provides that subject to its other provisions, Valero shall have the right to purchase such quantity of gas per day as Valero may from day to day elect to purchase up to the total quantity per day which the wells are capable of producing when produced at their respective maximum efficient rates of flow, in Lively's sole judgment reasonably exercised, or at their respective allowable rates of flow under applicable orders, rules, regulations or laws, whichever is the lesser rate of flow.

You are also instructed that Lively's daily "Deliverability" is defined by the Contract to be that quantity of gas which Lively had available for delivery from the Lands and Leases to Valero during each day in conformity with the requirements of the Contract, at a constant rate of flow, when Lively's wells were not produced in excess of their maximum efficient rate of flow, but not in excess of the maximum (including overproduction) rate of flow permitted by the laws,

rules and regulations of the Railroad Commission of Texas or other governmental regulatory agency having jurisdiction.

The term market demand means that amount of gas needed for current consumption.

You are instructed that in the production, transportation, or use of gas in a manner, in an amount, or under conditions which constitute waste is unlawful and is prohibited.

You are instructed that the term "waste" includes the production of gas in excess of transportation or market facilities or reasonable market demand for the type of gas produced.

You are instructed that the word "ratably" means proportionately. Under the Gas Market Demand Rule Valero shall nominate on Form T–3 a total quantity of gas equal to its downstream market demand plus shrinkage, line loss, plant fuel, and compressor use. Valero shall ratably apportion its actual take from all gas wells connected to its system so that takes from various gas producing properties shall be made without discrimination in favor of one producer or person as against another in the same field and without unjust or unreasonable discrimination between fields.

You are instructed that under the Gas Market Demand Rule, Lively is required to submit the following information to the Railroad Commission:

(1) Form P–4 Producer's Certificate of Compliance (on which the gatherer, the first purchaser, and the initial nominator shall be named).

(2) Form G–10 Gas Well Status Report (semi-annually unless otherwise required by special field rules).

(3) Form G–7 Producer's Forecast (monthly as required by Statewide Rule 30 and in accordance with instructions on Form G–7). Lively shall forecast a total quantity of gas not to exceed the amount of gas Lively expects to consume plus the amount of gas Lively expects to deliver to Valero as indicated by information provided by Valero pursuant to the Market Demand Rule.

We readily note that the instruction complained of was not unduly stressed, and is found in the middle of numerous instructions. The instruction complained of speaks of "rights to purchase" of Valero and not of "obligations" of Valero which is the basis of this cause of action. Further, the very first instruction of the series sets out clearly that portion of the contract which Lively asserts has been breached and which clearly sets out the "obligations" of Valero. Considering the entire set of instructions of Special Issue No. 2 and the entire charge, we hold that the complained of instruction was not a comment on the weight of the evidence, and probably did not cause the rendition of an improper judgment. The point of error is overruled.

Lively next contends the court erred in conditionally submitting Special Issue No. 3. The complaint is based on the contention that Special Issue No. 2 was merely an evidentiary issue and the controlling issue was Special Issue No. 3. We disagree.

We note with interest Lively's statement in its brief under the title "Preliminary Statement":

Lively alleged that Valero breached it's obligations under the contract by failing to take delivery of and pay for the Daily Contract Quantity of natural gas ... or pay for such Daily Contract Quantity of natural gas, whether taken or not....

Thus, Lively admits that whether Valero failed to take and pay or just failed to pay the Daily Contract Quantity of gas was critical to their cause of action.

Special Issue Nos. 2 and 3 with the conditional instruction read:

### SPECIAL ISSUE NO. 2

Do you find that Valero failed to take or pay for an amount of gas equal to the Daily Contract Quantity (DCQ)?

Answer Special Issue No. 3 only if you answered Special Issue No. 2 "yes," otherwise go to Special Issue No. 4.

### SPECIAL ISSUE NO. 3

What sum of money, if any, if paid now in cash, do you find to be due and owing to Lively under the Contract?

Where the court submits the controlling issues raised by the pleadings and the evidence, the case shall not be reversed because of the failure to submit other various phases or different shades of the same issue. TEX.R.CIV.P. 279; *Holmes v. J.C. Penney Co.*, 382 S.W.2d 472, 473 (Tex.1964). The court here fairly submitted Special Issue No. 2, which was the controlling issue, and properly conditionally submitted Special Issue No. 3, which was the damage issue. The point of error is overruled.

In the last three points of error, Lively contends there is no evidence or insufficient evidence to support the jury's answer to Special Issue No. 2, and that the jury's answer to Special Issue No. 2 was against the great weight and preponderance of the evidence. Lively, after conceding that the evidence of the Gas Market Demand Rule supports the jury finding in Special Issue No. 2, contends it has no probative value as a matter of law because the Gas Market Demand Rule does not abrogate Valero's obligations under the contract. Therefore, Lively would have us ignore this evidence. We disagree.

A no evidence point is a question of law and we can consider only that evidence and the reasonable inference there from which viewed in its most favorable light support the jury finding and we must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981); *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex. 1980). In determining the sufficiency of the evidence "the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). However, we must always remain cognizant that it is for the jury to judge the credibility of the witnesses, to assign the weight to be given

their testimony, and to resolve any conflicts or inconsistencies in the evidence. *Town & Country Mobile Homes, Inc. v. Bilyeu*, 694 S.W.2d 651, 656 (Tex.App.— Fort Worth 1985, no writ); *Precision Homes, Inc. v. Cooper*, 671 S.W.2d 924, 929 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Therefore, in determining the sufficiency of the evidence, appellate courts must recognize from the verdict of the jury what the jury, in their discretion, chose to believe. In so doing, we must accept the jury's resolution of any conflicts or inconsistencies in the evidence and not attempt to substitute our judgment for theirs. *Pool v. Ford Motor Co.*, 715 S.W.2d at 634.

The record reflects extensive testimony pertaining to the Gas Market Demand Rule and its direct effect upon the "Daily Contract Quantity" and "Deliverability" clauses of the contract. The testimony disclosed essentially that the rule was promulgated by the Texas Railroad Commission, who had regulatory jurisdiction over the critical aspects of the contract, and that Valero purchased from Lively the maximum "Daily Contract Quantity" of gas which was legally "Deliverable" by Lively under the dictates of the Gas Market Demand Rule. Lively attempted to establish that "Deliverability" under the contract was strictly based on G–10 volumes and that the Gas Market Demand Rule had no application to Valero's obligations under the contract.

The jury verdict clearly reveals that the jury chose to believe Valero's theory and that there was no breach of the "take-or-pay" clause as alleged by Lively. Considering all the evidence under the appropriate standards of review, we cannot conclude that the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d at 176. The last points of error are overruled.

The judgment of the trial court is affirmed.