Josefina Acosta **TORRES**; Adeodato
Torres; and Reymundo Ignacio
Torres, Appellants,

v.

**CATERPILLAR, INC., et al., Appellees.**

No. 04–94–00789–CV.

Court of Appeals of Texas,
San Antonio.

July 24, 1996.

Rehearing Overruled Sept. 9, 1996.

Rene Rodriguez, Corpus Christi, for appellants.

JoAnn Storey and Tracy J. Willi, Womble & Spain, Houston, for appellee Caterpillar Industrial, Inc.

Before RICKHOFF, STONE and HARDBERGER, JJ.

RICKHOFF, Justice.

This appeal arises from a suit involving the death of Reymundo Torres for which appellants contended appellee Caterpillar Industrial, Inc. ("Caterpillar") was responsible under a strict product liability theory. A partial motion for summary judgment was granted in favor of Caterpillar with regard to appellants' manufacturing defect and design defect claims,[1] and the jury found in favor of Caterpillar with respect to appellants' failure to warn defect claim. In five points of error, appellants raise the following complaints contending the trial court erred by: (1) granting the partial summary judgment dismissing the design defect claim; (2) instructing the jury regarding Caterpillar's agency relationship with its authorized dealers; (3) instructing the jury that Torres' employer, Rymco, Inc. ("Rymco"), was in default and negligent by failing to appear; (4) admitting the testimony of an improperly designated fact witness; and (5) accepting a jury verdict containing an irreconcilable conflict. The trial court's judgment is affirmed in part and reversed in part.

## FACTS

In May of 1989, Reymundo Torres was unloading containers from a light truck with a 1968 forklift manufactured by Caterpillar.

---

1. The partial summary judgment was granted by the Honorable Manuel Flores. The Honorable

Ron Carr presided over the jury trial.

As he was backing the forklift out of the truck, the forklift fell between the loading dock and the back of the truck, killing Mr. Torres.

Torres was working for a warehouse that was owned and operated by Rymco, a non-subscribing employer under Texas workers' compensation laws. Mr. De La Rosa, the president of Rymco, testified he purchased the forklift from a dealer in San Antonio, but he could not recall the name of the dealer, only that the agent worked in Laredo. The forklift was manufactured by Caterpillar; however, the overhead guard, which was standard equipment on forklifts delivered by Caterpillar to its dealers, was missing. The overhead guard was designed to protect the driver from falling debris rather than as a rollover protection device.

Appellants brought suit against both Rymco and Caterpillar. Appellants claimed Rymco's negligence caused Mr. Torres' injury while appellants' claim against Caterpillar was for strict product liability. Prior to trial, a partial summary judgment was granted in favor of Caterpillar as to the following: (1) Caterpillar, Inc., who was not the manufacturing entity, was dismissed from the suit with prejudice; (2) all allegations with regard to a manufacturing defect were dismissed; and (3) all allegations with regard to a design defect in the original overhead guard were dismissed. At trial, Rymco failed to appear and defend against appellants' claims; however, the case was tried before a jury as to appellants' claim against Caterpillar for a failure to warn or marketing defect.[2]

The jury failed to find that any marketing defect was a producing cause of Mr. Torres' death. The jury found the following percentage causation: (1) Mr. Torres—45%; (2) Rymco—50%; and (3) Caterpillar—5%. The jury awarded a total of $425,000 in damages, and the trial court entered a judgment against Rymco for the full amount.[3] The trial court's judgment also reflected that appellants took nothing by their suit against Caterpillar.

## ARGUMENTS ON APPEAL

In five points of error, appellants raise the following complaints contending the trial court erred by: (1) granting the partial summary judgment dismissing the design defect claim; (2) instructing the jury regarding Caterpillar's agency relationship with its authorized dealers; (3) instructing the jury that Rymco was in default and negligent by failing to appear; (4) admitting the testimony of an improperly designated fact witness; and (5) accepting a jury verdict containing an irreconcilable conflict. We address the points of error in the order raised by appellants.

### 1. Summary Judgment

In their first point of error, appellants contend that the trial court erred in rendering the partial summary judgment dismissing the design defect allegation. Appellants contend that their expert's affidavit raised a fact issue as to whether the overhead guard was defectively designed and could have been designed as a safer more effective rollover protective structure. Caterpillar counters that appellants' argument is raised for the first time on appeal since the expert affidavit presented by appellants to the trial court did not criticize the removability of the overhead guard.

In its motion for summary judgment, Caterpillar asserted the overhead guard was manufactured and delivered as standard equipment and was removed by unidentified third parties who were not under the control of Caterpillar. In support of this assertion, Caterpillar presented the affidavit of Martin T. Robertson, a staff engineer, who stated

2. Within thirty days before trial, appellants sought to amend their pleadings to assert negligence and gross negligence claims against Caterpillar. The trial judge struck these pleadings and stated the issue to be tried was the failure to warn defect.

3. Since Rymco was a non-subscribing employer, contributory negligence was not a defense, and, therefore, the trial court properly disregarded the percentage causation the jury attributed to Mr. Torres' negligence in awarding damages against Rymco. Acts 1917, p. 269 (Tex.Rev.Civ. Stat. Ann. art. 8306 § 1, 4 (Vernon 1967)) (repealed 1991) (current version Tex. Labor Code Ann. § 406.033 (Vernon Supp.1996)).

the forklift was initially sold and shipped to an authorized dealer in Cleveland, Ohio, who subsequently sold it to Republic Supply Co. in Northeastern, Ohio. Mr. Robertson further stated in his affidavit that the forklift was sold with the overhead guard as standard equipment, the overhead guard complied with A.S.A. B56.1–1959, and that the removal of the overhead guard is permissible in limited circumstances under O.S.H.A. regulations.[4] Finally, Mr. Robertson stated Caterpillar never regained possession of or exercised control over the forklift after initial delivery nor did it ever redesign the overhead guard.

Caterpillar also presented the excerpted deposition testimony of Mr. De La Rosa, the president of Rymco, who provided the following information regarding his purchase of the forklift:

Q. Did you buy the forklift involved in the accident on May 17, 1989 used or new?

A. Used.

Q. And who did you buy it from?

A. Caterpillar.

Q. A dealer?

A. In San Antonio.

Q. Do you remember the name of the dealer there?

A. The agent worked in Laredo. I don't recall the name right now.

Q. When did you buy it?

A. Fifteen years ago—I don't know.

In their response to Caterpillar's motion for summary judgment, appellants specified the forklift had the following defects: (1) the overhead guard, which was standard safety equipment on the forklift as manufactured, was removed before it was marketed and/or sold to Rymco by an agent, employee or representative operating under the control of Caterpillar; (2) the forklift contained no warnings regarding the danger in operating the forklift without the overhead guard; and (3) the overhead guard was defective in merely providing "falling object protection" and not "rollover protection."[5] Appellants presented the affidavit of Dr. Jeffrey Ketchman in support of their contention that genuine issues of material fact were raised as to whether each of these defects caused or contributed to Mr. Torres' death.

Dr. Ketchman stated in his affidavit that if an overhead guard had been in place at the time of the incident, "it would have provided a significant measure of protection such that the severity of Mr. Torres' injuries would have been significantly reduced (along with the probability of his death)." Dr. Ketchman further stated "another defect of the subject forklift is defective warnings and instructions," and the absence of such safety warnings and instructions to alert the user that the forklift was initially designed with an overhead guard was another contributing factor that caused Mr. Torres' injuries and death. Finally, Dr. Ketchman concluded the forklift should have been designed with a rollover protective structure, and the absence of such a structure rendered the forklift design defective, contributing directly to Mr. Torres injuries and death.

As previously noted, the trial court granted a partial summary judgment dismissing any allegation with regard to either a manufacturing defect or a design defect in the original overhead guard. Appellants' contention regarding the failure to warn defect was tried to the jury; therefore, the summary judgment only affected appellants' contentions regarding the absence of the overhead

---

4. A.S.A.B56.1–1959 is the American Standard Safety Code for Powered Industrial Trucks. Section 1910.178(m)(9) of the regulations promulgated by the Occupational Safety and Health Administration expressly provides:

An overhead guard shall be used as protection against falling objects. It should be noted that an overhead guard is intended to offer protection from the impact of small packages, boxes, bagged materials, etc., representative of the job application, but not to withstand the impact of a falling capacity load.

29 C.F.R. § 1910.178(m)(9) (1984)(admitted at trial as Caterpillar Trial Exhibit # 13); *see also Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex.1995)(noting OSHA regulations permit removal in certain low-clearance working environments where there is little risk of a rollover).

5. Appellants' response specifically references the defect in design based on the absence of a rollover protective structure which also is addressed in Dr. Ketchman's affidavit. Caterpillar's contention that this is a new theory is without merit.

guard and the absence of a rollover protective structure.

### a. Standard of Review

The standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

Texas law recognizes summary judgment to be a harsh remedy requiring strict construction. *Garcia v. John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 435 (Tex.App.—San Antonio 1993, writ denied). The reason for applying such a strict standard is because a summary proceeding is "not a conventional trial, but an exception to the usual and traditional formal procedure whereby witnesses are heard in open court and documentary proof is offered and received into evidence." *Id.* A summary judgment is not intended to permit a trial by deposition or affidavit and should not be resolved by weighing the relative strength of the conflicting facts and inferences. *Id.*

### b. Rollover Protection

A product may be held to be unreasonably dangerous based on a defect in manufacturing, design or marketing. *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex. 1995). A manufacturing defect is one created by a manufacturer's failure to conform to its own specifications, i.e., the product would not have been defective if it had conformed to the manufacturer's design specifications. *USX Corp. v. Salinas,* 818 S.W.2d 473, 482 n. 8 (Tex.App.—San Antonio 1991, writ denied). A design defect exists where the product conforms to the specification but there is a flaw in the specifications themselves. *Id.* Design defects are evaluated in light of the economic and scientific availability of safer alternatives. *Caterpillar, Inc. v. Shears,* 911 S.W.2d at 384.

In the instant case, appellants asserted the forklift was defectively designed by merely providing falling object protection and not rollover protection. In response to the motion for summary judgment, appellants produced Dr. Ketchman's affidavit wherein he stated that the failure to equip the forklift with a rollover protective structure was a design defect. Caterpillar did not controvert this affidavit. Although appellants would be required to produce evidence at trial that the forklift could have been equipped with a rollover protective structure without destroying its utility, we hold that Dr. Ketchman's affidavit was sufficient to raise a question of fact, thereby entitling the appellants to present this issue to a jury. *See Caterpillar, Inc. v. Shears,* 911 S.W.2d at 384 (manufacturer not required to destroy utility to make product safe).

### c. Removal of Overhead Guard

Appellants presented no summary judgment proof to counter the affidavit testimony of Martin T. Robertson, a staff engineer, who stated the overhead guard complied with A.S.A. B56.1–1959, and that the removal of the overhead guard is permissible in limited circumstances under O.S.H.A. regulations. *See also Caterpillar, Inc. v. Shears,* 911 S.W.2d at 384 (noting removability permissible in limited circumstances under regulations). Dr. Ketchman's affidavit merely states that the overhead guard would have provided some protection if it had been in place, not that the removability feature was a defect. Therefore, appellants presented no evidence that removability in itself was a design defect.[6]

6. We note that in order to prevail at trial on the design defect claim relating to the absence of rollover protection, appellants will be required to prove that a rollover protection design would not

The second issue presented with respect to the removal of the overhead guard is whether Caterpillar can be held liable under strict product liability for the sale of the forklift to Rymco without the overhead guard. Caterpillar asserted unauthorized third persons who were not under its control removed the guard. However, the only evidence as to the identity of the person or entity who sold Rymco the forklift was the deposition testimony of Rymco's president, Mr. De La Rosa. Mr. De La Rosa stated he purchased the forklift in approximately 1974 from a Caterpillar dealer in San Antonio through an agent in Laredo.

Resolving all doubt in favor of the non-movant, appellants contend we must assume from the evidence that the dealer from which Rymco purchased the forklift was one of Caterpillar's independent authorized dealers. We note that Caterpillar could have countered Mr. De La Rosa's testimony by presenting evidence from its authorized dealers that Rymco did not purchase a forklift from them. Since its authorized dealers stand in a special relation to Caterpillar, we may infer from Caterpillar's failure to present such evidence that the dealers testimony would have been unfavorable to Caterpillar. *See John Deere Co. v. May,* 773 S.W.2d 369, 377 (Tex. App.—Waco 1989, writ denied); *Texas Power & Light Co. v. Walker,* 559 S.W.2d 403, 406 (Tex.Civ.App.—Texarkana 1977, no writ)(failure to call person with special relationship raises presumption that person would testify disfavorably). Such an inference is in addition to our general summary judgment presumption resolving doubt in the favor of the non-movant.

Caterpillar also argued in its summary judgment motion that if we assume the forklift was purchased from an authorized dealer, there would be no post-sale strict liability created since the overhead guard was not claimed to be defective at the time of sale but simply not re-installed. However, we believe the issue is whether Caterpillar can be held liable under strict product liability if an authorized dealer reacquired a used forklift and

prevent the forklift from performing the same tasks it could preform under its existing design or, in other words, a rollover protection design

sold it without the overhead guard eight years after the initial delivery of the forklift by Caterpillar.

Section 402A of the Restatement (Second) of Torts imposes strict product liability only in those instances where the product is defective when sold and it reaches the user without substantial change. RESTATEMENT (SECOND) OF TORTS § 402A (1965); *see also McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 788–89 (Tex.1967)(adopting section 402A strict product liability theory). Comment g to section 402A states that "the seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed" or used. RESTATEMENT (SECOND) OF TORTS § 402A cmt. g (1965). Notwithstanding this limitation, however, if the manufacturer regains a significant degree of control over the product, and the product is determined to be defective during that period of control, the manufacturer can be held liable for damages resulted from that defect under the theory of post-sale strict liability. *See Dion v. Ford Motor Co.,* 804 S.W.2d 302, 311 (Tex.App.—Eastland 1991, writ denied); *see also Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 528–31 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Therefore, in the instant case, in order for Caterpillar to be entitled to summary judgment, it was required to show that it did not regain a significant degree of control over the forklift when the forklift was reacquired by its authorized dealer who sold the forklift to Rymco. Two cases assist us in determining whether Caterpillar regained control.

In *Bell Helicopter Co. v. Bradshaw,* a helicopter manufacturer was sued for injuries sustained when one of the tail rotor blades broke off causing the helicopter to crash. 594 S.W.2d at 526. The helicopter manufacturer was held strictly accountable for failing to order the replacement of the blades on the helicopter with newly designed blades when the helicopter was reacquired by an authorized Bell service station in 1969

would not destroy the forklift's utility. *See Caterpillar, Inc. v. Shears,* 911 S.W.2d at 384.

after being initially placed in commerce in 1961. 594 S.W.2d at 526, 530. The Bell service station acquired the helicopter in 1969 and resold the helicopter in 1973 to the owner of the helicopter whose employees were injured. *Id.* at 526. Although the court noted that Bell did not have the legal power to force the helicopter owners to replace the old blades with the new design, as a practical matter, the court concluded Bell had the ability to require its authorized service stations to replace the blades since the stations were obligated to adhere to Bell-issued service bulletins. *Id.* at 527–28.

In *Dion v. Ford Motor Co.,* a tractor manufacturer was sued when a tractor which was manufactured in 1950 rolled over on its operator in 1982. 804 S.W.2d at 304. As manufactured, the tractor was not equipped with a rollover protective system; however, such a system was subsequently developed and available for installation on the 1950 tractor. *Id.* at 305. The injured operator acquired the tractor from a third party in 1982, a few months prior to the accident. *Id.* At trial, the trial court excluded evidence and refused to submit questions to the jury on the manufacturer's post-sale duties to the operator, including evidence that rollover protection systems had been developed for the tractor at issue. *Id.* at 309–10. In affirming the trial court's decision, the appellate court distinguished the *Bell Helicopter* case on the following grounds: (1) although an authorized service station of the manufacturer serviced the tractor, the station never took title to the tractor; and (2) the manufacturer never issued any replacement program for the tractor.[7] *Id.* at 311–12.

Whether a post-sale duty exists under these facts is a question of law. *Dion,* 804 S.W.2d at 312. The only evidence in the summary judgment record regarding this issue is (1) the affidavit testimony of Martin T. Robertson, a staff engineer for Caterpillar, who stated that the forklift was initially sold and shipped on January 10, 1968 to an authorized dealer in Cleveland, Ohio, and that Caterpillar never regained possession or control; and (2) the deposition testimony of Rymco's president, Mr. De La Rosa, who stated he purchased the forklift without the overhead guard in approximately 1974 from a Caterpillar dealer in San Antonio through an agent in Laredo. While we are willing to infer from Mr. De La Rosa's testimony that the forklift was purchased from an authorized dealer, we are unwilling to infer that Caterpillar regained sufficient control over the forklift as a result of a dealer's reacquisition as to hold Caterpillar liable under a post-sale strict liability theory.

## 2. Instruction as to Agency Relationship

In their second point of error, appellants contend the trial court erroneously instructed the jury to disregard Caterpillar's agency relationship with its authorized dealers. Caterpillar responds the instruction was proper because the testimony of Mr. De La Rosa, to which Caterpillar contends the instruction relates, was irrelevant to any issue in the case. The instruction at issue is the following:

> You are instructed that the forklift in question left Caterpillar Industrial Inc.'s factory with an over head guard. You are further instructed that the seller of the used forklift is not a party to this law suit, and any evidence concerning the sale of the used fork lift without an overhead guard to Rymco by the used equipment seller shall be disregarded.

Explanatory instructions are proper when they aid the jury in answering the submitted issues. *Jobe v. Penske Truck Leasing Corp.,* 882 S.W.2d 447, 451 (Tex. App.—Dallas 1994, no writ); *Moody v. EMC Services, Inc.,* 828 S.W.2d 237, 244 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Instructions that impermissibly comment on the weight of the evidence, however, are improper. *Moody,* 828 S.W.2d at 244. Examples of instructions that would constitute impermissible comments would include

---

7. With respect to this second distinction, it should be noted that the replacement program in the *Bell Helicopter* case was not undertaken until after the accident giving rise to the suit on appeal. 594 S.W.2d at 527. We would not interpret the opinion in *Dion* as literally as Caterpillar which contends that no post-sale duty arises unless there is evidence of a replacement or recall program.

those where the judge assumes the truth of a material controverted fact, or exaggerates, minimizes, or withdraws some pertinent evidence from the jury's consideration. *Moody,* 828 S.W.2d at 244; *Lively Exploration Co. v. Valero Transmission Co.,* 751 S.W.2d 649, 653 (Tex.App.—San Antonio 1988, writ denied). To constitute reversible error, however, an impermissible comment must be one that caused or probably caused the rendition of an improper judgment. TEX.R.APP. P. 81(b)(1); *see also Moody,* 828 S.W.2d at 244; *Lively Exploration Co.,* 751 S.W.2d at 653. Incidental comments that are necessary or proper parts of explanatory instructions are permissible. *Moody,* 828 S.W.2d at 244; *Lively Exploration Co.,* 751 S.W.2d at 653.

█ The only issue submitted to the jury with regard to Caterpillar's liability was whether there was a defect in the marketing of the forklift at the time it left the possession of Caterpillar in 1968. Therefore, evidence regarding the transfer of the forklift to Rymco without the overhead guard was not relevant to the submitted issue, and we find the instruction would clearly aid the jury in focusing on the evidence relevant to the timing at issue.

### 3. Instruction Regarding Defaulting Party and Comparative Negligence Issue

Appellants contend in their third point of error that the trial court's instruction regarding Rymco's liability as a defaulting party was improper. The instruction submitted by the trial court read as follows:

> You are instructed that Rymco, Inc.'s negligence was a proximate cause of the injury, death or occurrence in question.

Appellants also contend that it was error for the trial court to submit an issue on Mr. Torres' contributory negligence.

█ Whether a trial court errs in submitting an instruction is reviewed on appeal under an abuse of discretion standard. *Perez v. Weingarten Realty Investors,* 881 S.W.2d 490, 496 (Tex.App.—San Antonio 1994, writ denied). When evidence at trial entitles a party to a verdict as a matter of law, a trial court may, on its own motion, instruct the jury as to the verdict it must

return or withdraw the case from the jury and render judgment. *Connell v. Connell,* 889 S.W.2d 534, 539 (Tex.App.—San Antonio 1994, writ denied). A judgment taken by default admits all allegations of fact set out in the petition and conclusively establishes the defendant's liability, both that the defendant was negligent and that such negligence caused the event upon which the plaintiff's suit is based. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex.1984). It follows from the foregoing rules that when a default judgment is taken, a trial court may, upon its own motion, instruct the jury as to the defaulting party's liability. *See Greater Houston Transp. Co. v. Wilson,* 725 S.W.2d 427, 429 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Therefore, we conclude that the trial court did not abuse its discretion in the instant case by properly submitting an instruction regarding Rymco's liability as a defaulting party in the instant case.

█ Contributory negligence and comparative causation are appropriate issues for jury submission in a strict liability case. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428–29 (Tex.1984); *see also* TEX. CIV. PRAC & REM.CODE ANN. § 33.003 (Vernon Supp.1996)(trier of fact to determine percentage responsibility of persons contributing to cause in any way whether by negligent act or by defective product). Where the injured party voluntarily encounters a known danger, the injured party can be held accountable for the party's own negligence even in a strict liability action. *Keen v. Ashot Ashkelon, Ltd.,* 748 S.W.2d 91, 92–93 (Tex.1988). In the instant case, there was abundant testimony as to the other means available to Mr. Torres for unloading a light truck and the warning he was given not to unload the size truck he was unloading with a forklift. Moreover, there was evidence that a forklift lot was located adjacent to Rymco's warehouse, and Mr. Torres commented to his wife that the forklifts on the other side of the fence had overhead guards. Given this evidence, we conclude the trial court properly submitted the issue regarding Mr. Torres' negligence and the comparative causation issue. *See* TEX.R. CIV. P. 277 (court shall

submit a question inquiring into percentage causation where jury must apportion culpability); Tex.R. Civ. P. 278 (court must submit questions raised by the evidence).

### 4. Testimony of Improperly Designated Fact Witness

In their fourth point of error, appellants argue that the trial court erroneously permitted Hector Flores, an improperly designated fact witness, to testify at trial. Caterpillar counters that there was good cause for the late discovery information provided regarding Flores and, in any event, Flores' testimony was cumulative of other evidence.

In their answers to interrogatories filed November 16, 1990, appellants first designated Flores as a fact witness providing an address and phone number for him and indicating that although he was at the Rymco warehouse the day of the accident, he was not a witness and was not contacted. On December 13, 1993, Caterpillar listed Flores in its list of trial witnesses as a fact witness with an address of "Rymco, Inc., Laredo, Texas." On December 20, 1993, appellants also listed Flores in their list of trial witnesses with an address of "Rymco Storage and Forwarding Agency, Inc., 2016 Lincoln, Laredo, Texas." On March 16, 1994, Caterpillar attempted to have Flores served with a trial subpoena, and the officer filed his return of service with the court on March 21, 1994. On Friday, March 24, 1994 at 4:04 p.m., Caterpillar provided appellants with its amended list of trial witnesses, which included a current phone number for Flores. The case was called for trial on March 28, 1994.

 Parties have an affirmative duty to supplement discovery answers, including supplementation necessary to supply addresses for individuals identified by a party as a fact witness in response to a discovery request. *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); *Glenn v. Abrams/Williams Brothers,* 836 S.W.2d 779, 782 (Tex.App.— Houston [14th Dist.] 1992, writ denied). The sanction for failing to supplement a discovery response is automatic exclusion of the testimony of the witness for whom the supplemental information was not provided. *Boothe,* 766 S.W.2d at 789; *Morrow v.*

*H.E.B., Inc.,* 714 S.W.2d 297, 297 (Tex.1986); *see also Garcia v. Allen,* 751 S.W.2d 236, 238 (Tex.App.—San Antonio 1988, writ denied). The only exception to this rule is where the trial court, in its discretion, determines the testimony should be allowed for good cause shown. *See Boothe,* 766 S.W.2d at 789; *Morrow,* 714 S.W.2d at 297–98; *Garcia,* 751 S.W.2d at 238. The trial court's determination as to whether good cause has been shown will only be set aside on appeal if the trial court abuses its discretion. *Morrow,* 714 S.W.2d at 298. In reviewing whether the trial court abused its discretion on appeal, it must be determined whether the trial court acted arbitrarily or unreasonably or without reference to any guiding rules and principles. *Id.; see also Aluminum Co. of America v. Bullock,* 870 S.W.2d 2, 3–4 (Tex.1994).

 One factor a trial court may consider in determining whether there has been a showing of good cause is whether the witness was designated by both parties. *Aluminum Co. of America v. Bullock,* 870 S.W.2d at 4. The absence of surprise is another factor the trial court may consider. *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex.1992)(citing *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395 n. 2 (Tex. 1989)). Where the party is seeking to present the testimony of a late designated witness at trial or a witness for whom a current address was provided in a late supplementation, the court may consider the efforts used to obtain the information in light of the factual difficulty of obtaining it. *See, e.g., Glenn,* 836 S.W.2d at 782 (extensive efforts used to locate witness who had moved numerous times); *Johnson v. Gulf Coast Contracting Services, Inc.,* 746 S.W.2d 327, 329–30 (Tex. App.—Beaumont 1988, writ denied)(search for president of inactive corporation who no longer maintained office).

In the instant case, both parties designated Flores as a fact witness; however, neither party had a current address or phone number. Appellants presented a letter at the "good cause" hearing dated March 16, 1994, wherein Caterpillar was requesting that a subpoena be issued for Flores. That letter contained Flores' current work address and phone number. Although the phone number

was later added to the amended trial list on March 24, 1994, the current address was not added. It was undisputed that appellants were able to contact Flores before trial and that Caterpillar agreed to permit appellants to take his deposition before he testified. Appellants contended that there was insufficient time to prepare for Flores' testimony because it had "changed since they've since spoken to Caterpillar." Caterpillar asserts that this is another way of saying appellants did not like what Flores had to say.

Even were we to conclude that the trial court erred in admitting Flores' testimony, the error would not require reversal unless it resulted in harm to appellants or was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Alvarado*, 830 S.W.2d at 917. Caterpillar contends that Flores' testimony was cumulative of other evidence; however, as appellants assert, Flores was the only eyewitness to testify regarding the events on the date of Mr. Torres' death, and he testified that he expressly told Torres on two occasions not to use the forklift to unload the light truck being unloaded when the accident occurred. Nevertheless, as Caterpillar also notes, Flores' testimony related to the actions taken by Torres which contributed to the accident resulting in his death, not to any defect in Caterpillar's failure to warn. The only testimony regarding this issue was favorable to appellants, since Flores stated that if the warning had been on the body of the forklift, he would not have used the forklift without the overhead guard. Therefore, we find that the error in admitting Flores' testimony, if any, did not cause the rendition of an improper judgment.

### 5. Irreconcilable Conflict in Jury Finding

Appellants raise a fifth point of error contending the trial court erred in accepting the jury verdict due to the conflict between the liability and percentage of negligence findings. Apart from the point of error recital, appellants' brief contained no argument regarding this point of error.

Caterpillar first contends that the appellants have waived this point of error in failing to brief the point. This court's decision in *Tatum v. Liner*, 749 S.W.2d 251, 259–60 (Tex.App.—San Antonio 1988, no writ), supports this contention. In *Tatum*, this court held that merely listing a point of error without any reference to the record or argument was a "flagrant" violation of Tex.R.App. P. 74 and refused the consider the points. *Id.* However, the Texas Supreme Court has expressed some concern as to the propriety of affirming a judgment based on briefing inadequacies without first ordering rebriefing. *See Fredonia State Bank v. General American Life Ins. Co.*, 881 S.W.2d 279, 285–86 (Tex.1994)(citing *Inpetco, Inc. v. Texas American Bank/Houston, N.A.*, 729 S.W.2d 300 (Tex.1987). Following the decision in *Inpetco*, this court ordered rebriefing in a case where the brief failed to comply with Tex.R.App. P. 74, and only affirmed the judgment after no response to the order was forthcoming. *Smith v. Valdez*, 764 S.W.2d 26, 27 (Tex.App.—San Antonio 1989, writ denied). Although we believe appellants have waived this point of error by failing to brief the point, we further hold the point was also waived based on appellants' untimely objection.

Appellants did not raise their complaint regarding the inconsistency in the jury's answers until they filed their motion for mistrial on May 3, 1994. The jury returned its verdict on April 1, 1994, and judgment was entered on August 22, 1994. No mention is made in the judgment regarding the conflict between the no liability finding as to Caterpillar but the apportionment to Caterpillar of 5% causation. The general rule provides that no complaint regarding a conflict in the jury answers may be raised on appeal unless an objection is raised before the jury is discharged. *See, e.g., Ciba–Geigy Corp. v. Stephens*, 871 S.W.2d 317, 324 (Tex. App.—Eastland 1994, writ denied); *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 23 (Tex. App.—Corpus Christi 1993, writ denied); *Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 109–110 (Tex.App.—Eastland 1992, writ denied); *but see First Texas Service Corp. v. McDonald*, 762 S.W.2d 935, 939–40 (Tex.App.—Fort Worth 1988, writ denied). In *McDonald*, however, the Fort Worth court refused to follow the general

rule holding that the rule was altered due to previous precedent which had misconstrued the Supreme Court's decision in *St. Louis Southwestern Railway Co. v. Duke*, 424 S.W.2d 896, 897 (Tex.1967). 762 S.W.2d at 939–40. Although the Forth Worth court disagreed with the precedent, it felt obligated to follow it. *Id.* As Caterpillar correctly notes, however, the Fort Worth court disregarded the fact that in the Supreme Court's decision in *Duke*, counsel for the plaintiffs did move that the jury retire for further deliberations based on an alleged conflict in the verdict. We believe the better course is to follow the general rule that in the absence of an objection to a perceived conflict in the jury's verdict before the jury is excused, any complaint regarding such conflict is waived.

■ Finally, in the event of a perceived conflict between a liability and percentage causation finding, the jury's response to the liability issue is controlling. *American Jet, Inc. v. Leyendecker*, 683 S.W.2d 121, 127 (Tex.App.—San Antonio 1984, no writ); *Williams v. Finley*, 567 S.W.2d 611, 612 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). Therefore, even if the appellants did not waive this issue, the trial court was correct in disregarding the percentage causation finding and entering a judgment that appellants take nothing against Caterpillar.

## CONCLUSION

Appellants' first point of error is sustained, and the summary judgment in favor of Caterpillar with respect to appellants' allegation of design defect based on the overhead guard being designed to protect the driver from falling debris rather than as a rollover protection device is reversed, and that cause is remanded to the trial court for trial. Appellants' remaining five points of error are overruled, and the remainder of the judgment is affirmed.