Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00857-CR

James **HUMPHRIES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2005CR6650
Honorable David Peeples, Judge Presiding

Opinion by:  Alma L. López, Chief Justice

Sitting:  Alma L. López, Chief Justice
Catherine Stone, Justice
Sandee Bryan Marion, Justice

Delivered and Filed:  October 15, 2008

AFFIRMED

James Humphries was convicted by a jury of indecency with a child by exposure. Humphries's three-year sentence was suspended, and he was placed on community supervision for three years.  On appeal, Humphries contends: (1) the trial court erred in admitting outcry testimony; (2) the trial court erred in excluding an exhibit that was previously admitted; (3) the jury's findings contained an irreconcilable conflict; and (4) the evidence is insufficient to support the conviction. We affirm the trial court's judgment.

## BACKGROUND

Humphries was indicted on three counts of indecency with a child.  Two counts alleged indecency by contact, and one count alleged indecency by exposure.  Humphries was acquitted of the two counts of indecency by contact but was convicted of indecency by exposure.

Humphries is V.W.'s uncle.  V.W. was in first grade at the time of the alleged offenses, and she was in fifth grade at the time of trial.  V.W. testified that she was in court because a long time ago she went into the bathroom with Humphries, but she did not remember anything about it.  She recalled having sleepovers at Humphries's house and taking baths but only alone.  She did not remember talking with a counselor.  V.W. remembered Brenden Parks, who lived across the street from her in first grade, but she did not remember his dad or talking with his dad.  V.W. did not remember anyone from Child Protective Services coming to her school and talking to her.  V.W. stated that it was possible that she had forgotten things that happened in first grade.

In February of 2004, Jimmy Parks's son, Bo, told Parks that he had a concern about V.W.  Bo's son, Brenden, played with V.W. in the neighborhood.  Based on Bo's concerns, which Parks believed sounded like improper sexual behavior, Parks decided to talk to V.W.  V.W. told Parks that she had gone into the bathroom at Humphries's insistence or invitation, and Humphries would have her squeeze his "thing" to help him go to the restroom.  V.W. told Parks that she squeezed until yellow "stuff" shot out which V.W. believed was "pee."  Parks reported what he heard to the authorities because he knew he had a legal obligation to report the information and also knew that Humphries volunteered at his grandson's school.  During cross-examination, Parks agreed that he did not use the word "insistence" in his report.  Parks stated he videotaped his conversation with V.W. so that he would have an accurate record of what she said.

Tracy Fazzone, a school counselor, testified that Humphries was a volunteer at her school and a mentor to two students with special needs. Bo reported his concerns regarding V.W. to Fazzone. Fazzone interviewed V.W. who told her that she would "play-fight naked" with Humphries and took baths with him. Humphries referred to her private parts as a "beautiful little flower." V.W. also told Fazzone that Humphries's "balls" were soft when they took baths together. After speaking with the principal, Fazzone filed a report with Child Protective Services, who sent a representative to speak with V.W. that afternoon. On cross-examination, Fazzone stated that V.W. did not report any touching or say anything about having secrets. Fazzone also stated that V.W.'s teacher had reported that V.W. had behavior consistent with children with attention deficit disorder, including trouble focusing. V.W. did not appear to be withholding information from Fazzone. On re-direct examination, Fazzone testified that telling lies is not a symptom of attention deficit disorder.

Hung Pho was the investigator with Child Protective Services who interviewed V.W. At the time of the interview, V.W. appeared to be nervous. She was fidgety and had trouble maintaining eye contact. V.W. told Pho that she visited Humphries's home often and was comfortable with him. Pho testified that V.W. also stated that Humphries gave her baths but did not get in the bath with her. V.W. further stated that Humphries did not refer to her genitals as "a beautiful little flower." In response to Pho's question, V.W. stated that she had never touched Humphries's penis. After interviewing V.W., Pho called the police and asked them to meet him at Humphries's home so Pho could interview him. Humphries told Pho that he did give V.W. baths but that he never got into the bath with her. Humphries usually wore swimming trunks to bathe V.W. because she splashed a lot. In response to further questioning, Humphries admitted that he took his clothes off and got in the

bath with V.W. on one occasion. Humphries told Pho that "he just got carried away." Humphries stated that neither his wife nor V.W.'s mother knew about this incident. Humphries told Pho that V.W. would sometimes walk in while he was using the bathroom because the door did not have a lock and V.W. would touch his penis accidentally. In response to further questioning, Humphries told Pho that he had explained to V.W. that he had an enlarged prostate and had to squeeze his penis to urinate. Because V.W. did not understand his explanation, Humphries stated that he placed V.W.'s hand on his penis to show her how it worked on two occasions. In response to whether he had ever "play-fought naked" with V.W., Humphries responded that they would play on the bed sometimes, and he removed his pants one time because he had pencils in his pocket, and V.W.'s dress also came off. Pho stated that Humphries denied molesting V.W. because his understanding was that molestation required vaginal penetration. After the interview, Pho told Humphries that he did not believe it was safe for him to be around V.W. or her brother, and Humphries voluntarily agreed not to have further contact with them. Pho referred V.W. and her mother to the Child Advocacy Center.

During cross-examination, Pho stated that the school suspected that V.W. had attention deficit disorder. Pho testified that V.W. had many sources of stress at the time she was interviewed, including the recent death of her father three weeks earlier and moving from another state in the prior year. V.W. had emotional problems and was seeing a counselor at the school. Pho agreed that V.W. being fidgety and having difficultly maintaining eye contact were symptoms of attention deficit disorder. Pho stated that V.W. did not try to hide anything and denied having secrets. On re-direct examination, Pho testified that Humphries's wife was horrified when he told her what Humphries admitted doing.

Detective Adam Zeldes was assigned to investigate the alleged abuse. Zeldes stated that Humphries admitted taking a bath with V.W. In his written statement, Humphries explained that he began wearing a bathing suit when V.W. took a bath because she would get him all wet. On one occasion, Humphries stated that he took off his bathing suit and got into the tub with V.W. Humphries stated, "I thought if I wore my bathing suit in the tub, my wife would see the wet suit and ask questions." Humphries further stated:

> From the time I got into the tub without my clothes on, I began to wonder if I should be doing this. I thought to myself that it wasn't right to be in the tub without any clothes on. I kept thinking what would my – I kept thinking what would my wife say, what would [V.W.'s] mom and dad say. I stayed in the tub with her having fun. After about five or ten minutes, we got out and dried off.

Humphries further admitted that V.W. came into the bathroom one day and saw him trying to urinate. Humphries told her he was not urinating because "it was broke, and that I had to squeeze it to make it work." Humphries stated that V.W. grabbed his penis and squeezed it, and he told her that was the way it worked. Humphries stated that V.W. walked into the bathroom on one other occasion and grabbed his penis. Humphries stated that it was not his intent to molest V.W., and he regretted that the incident may cast doubts on his intentions.

Nancy Kellogg was the medical director of the clinic where V.W. was taken for a physical examination. During her examination, V.W. denied that anyone had hurt or touched her private parts or that she was made to do anything to someone else. V.W. was almost seven when she was examined. V.W. sucked her thumb and rocked during the examination. V.W. admitted taking baths with Humphries but stated that they only touched hands. V.W.'s physical exam was normal. Kellogg testified that abused children often want to protect their abusers. Kellogg further testified that ADHD would not cause a child to create or fabricate allegations of sexual abuse.

Kathryn Levine, a Methodist minister, knew Humphries from when he was a youth teacher at a church where she served as the children's minister. Levine stated that she would continue to trust Humphries with female students, believe he is an outstanding citizen with the highest integrity, and would welcome him in her church as a youth teacher. On cross-examination, Levine stated that she would have to consider the facts of each case in context before reporting an outcry of abuse.

John Mansur met Humphries in the military and had known him for forty-one years. Mansur testified that Humphries has the highest reputation in the community. Humphries's oldest son, Thomas Humphries, testified that his father was actively involved with adult and youth ministry until this incident, and his reputation in the community is outstanding.

V.W.'s mother testified that V.W. had been in special education classes since first grade. V.W.'s mother stated that V.W. frequently walked in on people using the restroom. V.W.'s mother stated that she would bathe with her children while living in California to conserve water and energy. V.W.'s mother stated that V.W. had ADHD and was incredibly impulsive. V.W. has difficultly relating to her peers because she invades personal space. When V.W. was in first grade, she had the maturity of a three or four year old. V.W. has a habit of constantly rocking. V.W.'s mother testified that when her husband died, she wanted Humphries to be a male role model for her children. V.W.'s mother stated that V.W. had trouble sleeping before the trial because she could not remember and was afraid she was going to say something wrong. V.W.'s mother stated that she was not bothered by Humphries bathing the children.

On cross-examination, V.W.'s mother admitted that she told Pho that she had asked Humphries and her aunt to stop giving the children baths; however, she testified that she made those

statements because Pho had threatened to remove her children from her. On re-direct examination, V.W.'s mother stated that V.W. was not able to accurately recount events.

V.W.'s grandmother testified that Humphries reported to her that V.W. had gone into the restroom while he was using it and had touched him. V.W.'s grandmother stated that Humphries was upset and asked her to talk to V.W.

Dr. Sharon Braun, a psychologist, examined V.W. and determined that she has a severe case of ADHD. Dr. Braun testified that the trauma experienced by V.W. in moving and losing her father destabilized V.W. Children with ADHD who experience trauma get "manicy" and start saying and doing things that cause problems. ADHD children often give extremely inaccurate views of events because their views are distorted. The ability of ADHD children to recall events is impaired, and their recollections contain inaccuracies. Although the ability to recall is impaired, Dr. Braun agreed that not all information provided by ADHD children is inaccurate.

Dr. Thilo E. Burzlaff, Humphries's doctor, testified that Humphries has an enlarged prostate. Dr. Burzlaff stated that Humphries's prostate is one of the most enlarged of all of the patients he has treated. Dr. Burzlaff testified that men with enlarged prostates like Humphries often squeeze their penis to build up pressure to enable them to urinate. Given his condition, Humphries would be unable to stop urinating once the process started.

Humphries testified that V.W. often walked in on people using the restroom. Humphries stated that V.W. walked in on him only once and explained he reported that it happened twice because he was nervous. Humphries stated that he has a serious prostate problem. When V.W. walked in on him, she asked why he was not "peeing." Humphries responded that his penis was broke, and he had to squeeze it. V.W. reached out and "tweaked it" and ran out of the room.

Humphries stated that Pho's version of the events in his report was untrue, and he never told Pho that he placed V.W.'s hand on his penis. Humphries stated that when he finished urinating, he went to the kitchen and complained to V.W.'s grandmother and asked that V.W. be told not to do that again. In response to questions regarding the incident when Humphries got into the bathtub with V.W., Humphries stated that he did not want to expose his privates to V.W. and entered the back end of the tub while V.W.'s view was shielded by the glass doors. Humphries stated that V.W. could not see his privates in the bathtub because of the bubbles. Humphries stated that Detective Zeldes told him when he contacted him that a lawyer would not be permitted to be present in the interview room, so Humphries went by himself.

### SUFFICIENCY

In determining the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id.* at 9.

In his seventh and eighth issues, Humphries asserts that the evidence is legally and factually insufficient to show that he: (1) intentionally exposed himself to V.W.; and (2) exposed himself for the purpose of arousing or gratifying the sexual desire of any person. TEX. PEN. CODE ANN. § 21.11 (Vernon 2003). The requisite specific intent to expose oneself and to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, remarks, and all surrounding circumstances. *Navarro v. State*, 241 S.W.3d 77, 79 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.—San Antonio 2000, pet. ref'd). An oral expression of intent is not required; the conduct itself is sufficient to infer intent. *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

In this case, Humphries admitted that he removed his clothes and entered the bathtub with V.W. Although Humphries denied that he intentionally exposed himself to V.W., the jury could have chosen to disbelieve this testimony based on their viewing of the photographs of the bathroom. In addition, the jury could have chosen to disbelieve this testimony based on V.W.'s statement to Fazzone that Humphries and she took baths, plural, together and that Humphries's "balls" were soft when they took baths together. With regard to Humphries's intent to gratify his sexual desire, the jury could consider Humphries's decision to cover-up his actions by not wearing his swimsuit to avoid questions by his wife even though he admitted wearing his swimsuit on other occasions. The jury also could consider Humphries's statement to Detective Zeldes that he remained in the bathtub despite his second thoughts about what his wife and V.W.'s parents might think. This evidence is legally and factually sufficient to support the jury's findings that Humphries intentionally exposed himself to V.W. with the intent to arouse or gratify his sexual desire.

## CONFLICTING JURY FINDINGS

In his fifth and sixth issues, Humphries contends that the jury made conflicting jury findings by acquitting him of the indecency by contact charges but convicting him of the indecency by exposure charge. Humphries asserts that because the indictment alleged both an indecency by contact charge and indecency by exposure charge "on or about" the same date, the same conduct had to give rise to both charges. First, we note that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is prior to the presentation of the indictment and within the statutory limitation period. *Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). Second, because Humphries did not raise any contention concerning the conflicting jury findings before the jury was discharged, he would have waived this complaint if it were a proper complaint. *Medistar Corp. v. Schmidt*, No. 04-07-00369-CV, 2008 WL 2514802, at *7 (Tex. App.—San Antonio June 25, 2008, no pet. h.); *Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 245 (Tex. App.—San Antonio 1996, writ denied). Finally, "[b]ecause criminal verdicts must be general, there is in criminal law no doctrine, as in civil cases, requiring a new trial when conflicting jury answers cannot be reconciled." *Benavides v. State*, 992 S.W.2d 511, 519 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

## ADMISSION AND EXCLUSION OF EVIDENCE

In his first issue, Humphries complains about the admission of Jimmy Parks's testimony because the outcry statement V.W. made to him was unreliable. In his second, third, and fourth issues, Humphries complains about the exclusion of the audio tape of Pho's interview of V.W. Although Humphries contends that the exclusion of the audio tape violated his constitutional rights,

the erroneous exclusion of evidence is generally non-constitutional error. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). It is only when the evidence forms such a vital portion of the case that its exclusion effectively precluded an appellant from presenting a defense that the error is constitutional. *Id*. Humphries fails to show how the exclusion of the audio tape formed such a vital portion of his case that its exclusion effectively precluded him from presenting his defense, and the record does not support such an assertion. Accordingly, we conclude that the exclusion of the audio tape, if erroneous, was non-constitutional error.

For purposes of this opinion, we will assume, without deciding, that the trial court abused its discretion in admitting Parks's testimony and in excluding the audio tape. Rule 44.2(b) provides that any non-constitutional error which does not affect substantial rights must be disregarded. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission or exclusion of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In determining harm, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id*. at 355.

In this case, Parks's testimony only related to the conduct involving the indecency by contact charges for which Humphries was acquitted. Moreover, the inconsistencies that Humphries assert exist in statements made by V.W. during the interview also relate to the indecency by contact charges which the jury rejected. Interestingly, in the transcript of the audio tape attached to Humphries's brief, V.W. stated that Humphries had taken off his swimsuit while in the bathtub with her. This is

contrary to Pho's testimony at trial in which he stated V.W. reported that Humphries had not removed his swimsuit. The jury's verdict in this case is supported by Humphries's own admission that he decided to remove his clothes and get into the bathtub with V.W. Although Humphries denied that he exposed himself, the jury viewed pictures of the bathtub and rejected this testimony. Furthermore, V.W. reported to Fazzone that she did see Humphries's private parts. Moreover, the jury could have disbelieved Humphries's testimony regarding the exposure and his intent based on the circumstances. Humphries told Detective Zeldes that he decided not to wear his swimsuit, despite his testimony that he typically wore the swimsuit when giving V.W. a bath, because he was trying to hide his behavior from his wife. Humphries also told Detective Zeldes that he was concerned about what his wife and V.W.'s parents would say. From this evidence, the jury could have inferred Humphries believed his behavior was inappropriate but he nevertheless continued to engage in that behavior. Because the evidence about which Humphries complains was relevant to the charges for which he was acquitted and because Humphries's own admissions provide evidence to support the charge for which he was convicted, we have a fair assurance, after examining the record as a whole, that the error, if any, in admitting Parks's testimony and in excluding the audio tape did not and would not influence the jury. *Id*.

## Conclusion

The trial court's judgment is affirmed.

Alma L. López, Chief Justice

DO NOT PUBLISH