ACCEPTED
04-14-00562-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/10/2015 4:51:13 PM
KEITH HOTTLE
CLERK

Morgan, Lewis & Bockius LLP
1717 Main Street
Suite 3200
Dallas, Texas 75201-7347
Tel. 214.466.4000
Fax: 214.466.4001
www.morganlewis.com

# Morgan Lewis

COUNSELORS AT LAW

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

4/10/2015 4:51:13 PM

KEITH E. HOTTLE
Clerk

**Allyson N. Ho**
Partner
214.466.4180
aho@morganlewis.com

April 10, 2015

## VIA ELECTRONIC FILING

Keith E. Hottle, Clerk
Texas Court of Appeals
Fourth District, San Antonio
300 Dolorosa, Suite 3200
San Antonio, Texas 78205

> Re:   No. 04-14-00562-CV
>       *Jesus De Los Santos, Jr., et al. v. Ford Motor Company*

Dear Mr. Hottle:

We write to respond to the post-submission letter brief filed by Plaintiffs-Appellants in the above-referenced appeal. Please forward this response to the panel members assigned to this appeal for their consideration.

Plaintiffs' letter brief only confirms that the trial court properly granted directed verdict on their manufacturing defect claim. Crucially Plaintiffs-Appellants concede (at 2) that the axle met Ford's design specifications for hardness. That concession is dispositive of this case. *See Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 239 (Tex. App.—San Antonio 1996, writ denied) ("A ***manufacturing*** defect is one created by a manufacturer's failure to conform ***to its own specifications***, i.e., the product would not have been defective if it had conformed to the manufacturer's design specifications. A ***design*** defect exists where the product ***conforms to the specifications*** but there is a flaw in the specifications themselves.").

Plaintiffs complain (at 3) that Ford should have had similar specifications for brittleness. But that argument only confirms that this is a ***design*** defect case—not a ***manufacturing*** defect case. If brittleness specifications existed, the axle could have been measured against those specifications. If the axle deviated from those specifications in a manner that rendered it unreasonably dangerous, then that would be manufacturing defect. But that is not what we have here, by virtue of Plaintiffs own admission that the axle met Ford's specifications.

Plaintiffs cannot be heard to argue that a set of specifications ***should*** have existed, and that ***if*** they had existed, then the product would have deviated from them. It is the deviation from

Almaty  Beijing  Boston  Brussels  Chicago  Dallas  Dubai*  Frankfurt  Harrisburg  Houston  Irvine  London  Los Angeles  Miami
Moscow  New York  Palo Alto  Paris  Philadelphia  Pittsburgh  Princeton  San Francisco  Tokyo  Washington  Wilmington

*In association with Mohammed Buhashem Advocates & Legal Consultants

the ***manufacturer's*** specifications (or planned output) that is the indispensable element of a manufacturing defect claim, as opposed to a design defect claim. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) ("The requirement of a deviation from the ***manufacturer's*** specifications or planned output serves the essential purpose of distinguishing a manufacturing defect from a design defect.") (emphasis added).

Indeed, the reason Plaintiffs' expert Clauser testified that the axle was "brittle" was that, according to him, the recipe used for the steel in the axle had too much phosphorus, which "weakens the bonding between the adjacent grains" and thus "makes the steel brittle" such that it "fails at lower [loads] than it should." 6 RR 96:1-6, 109:11-13; 7 RR 88:23-89:4, 97:17-21. That is a textbook design issue, not a manufacturing issue.

What is more, in the field of metallurgy, "brittle material is not a defective material." 12 RR 111:12-14. Brittleness is simply a characterization of *how* metal breaks, not how *strong* the metal is. 12 RR 111:14-16. That is likely why Plaintiffs have not identified any "brittleness" manufacturing specification—either in their letter or at trial—nor explained how "brittleness" could even be measured. Tensile strength and hardness—which Ford's specifications address—is what measure the forces necessary to break an axle. They are *strength* tests—and Plaintiffs concede in their letter that the axle passed those tests. Plaintiffs' "brittleness" argument is just another variation of their argument that there should have been a specification that did not exist—and as already demonstrated, that is a design issue, not a manufacturing issue, under Texas law.

Finally, Plaintiffs' letter brief repeatedly assumes that Ford's specification or planned output for the axle was a performance standard in a sideways yaw, which it was not. If that argument were accepted, then all cases where the product did not perform as expected would be manufacturing defect cases. That is not the law in Texas. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (evidence of a product failure alone is "so slight as to make any inference a guess [and] is in legal effect no evidence"); *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 327-28 (5th Cir. 2014) (discussing the difference between performance standards and design specifications and observing that "it is inconsistent with the law as the Texas Supreme Court has stated it" to rely on performance standards to prove a manufacturing defect). In sum, nothing in Plaintiffs' letter brief alters the conclusion that the trial court properly granted directed verdict to Ford as to the manufacturing defect claim, and that judgment should be affirmed.

Sincerely,

Allyson N. Ho

ANH/lks
cc: All Counsel via ECF